## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MARYLAND

| | |
|---|---|
| **BALTIMORE FLIPS ISRAEL 2020 LLC, NOFIM LLC, BALTIMORE FLIPS ISRAEL 2 LLC, BALTIMORE FLIPS 2 ISRAEL 2020 LLC and BALTIMORE FLIPS MANAGEMENT 2020 LLC** 919 North Market Street, Suite 950 Wilmington, Delaware 19801, **Plaintiffs,** **v.** **CHANANEL YOSEF** 9 Spring Meadows Drive Ormond Beach, Florida 32174 and **AVI ABRAHAM YOSEF** 405 Main Trail Ormond Beach, Florida 32174 and **SALAZAR LAW P.C.** 600 Reisterstown Road, 7th Floor Baltimore, Maryland 21208 Baltimore County and **YOSEF CHAIM SALAZAR** 600 Reisterstown Road, 7th Floor Baltimore, Maryland 21208 Baltimore County, **Defendants.** | CIVIL ACTION NO. _____ |

## **COMPLAINT**

Plaintiffs Baltimore Flips Israel 2020 LLC, Nofim LLC, Baltimore Flips Israel 2 LLC, Baltimore Flips 2 Israel 2020 LLC and Baltimore Flips Management 2020 LLC, by their undersigned attorneys, file this Complaint against defendants Chananel Yosef and Avi Abraham Yosef, arising from defendants' fraudulent actions, conversion and Racketeer Influenced and Corrupt Organization Act (RICO) violations, among other gross misconduct in inducing plaintiffs to invest, and to continue to invest, in what turned out to be a massive real estate scam; and against Yosef Chaim Salazar and Salazar Law P.C. as co-conspirators and participants in defendants' scheme and enterprise to defraud plaintiffs.

## **PARTIES**

1.      Plaintiffs Baltimore Flips Israel 2020 LLC ("Baltimore 1"), Nofim LLC ("Nofim"), Baltimore Flips Israel 2 LLC ("Baltimore 2"), and Baltimore Flips 2 Israel 2020 LLC ("Baltimore 3"), are all Delaware limited liability companies whose registered agent currently has an address at 919 North Market Street, Suite 950, Wilmington, Delaware 19801.  Their members are citizens of Israel and residents therein.

2.      Plaintiff Baltimore Flips Management 2020 LLC ("Baltimore Management") is a Delaware limited liability company, whose registered agent has an address at 919 North Market Street, Suite 950, Wilmington, Delaware 19801, which is co-managed by Elior Carmeli ("Carmeli") and Tal Shalom Boiman ("Boiman"), who are both citizens and residents of Israel.

3.      Each of Baltimore 1, 2, and 3 is managed by Baltimore Management as manager, through Carmeli and Boiman.

4.      Nofim is managed by Haim Uzan, its sole member, who assigned the day-to-day effective management of Nofim LLC to Carmeli.  Uzan likewise is a citizen and resident of Israel.

5.      Defendants Chananel Yosef ("Chananel Yosef") and Avi Abraham Yosef ("Avi Yosef") (collectively, the "Yosef Brothers"), upon information and belief are citizens of Israel, and permanent resident aliens of the United States, who are currently domiciled in Florida.

6.      Chananel Yosef has lived in the United States since 2015.  His current address is believed to be 9 Spring Meadows Drive, Ormond Beach, Florida 32174.  Avi Yosef has lived in the United States since 2016.  His current address is believed to be 405 Main Trail, Ormond Beach, Florida 32174.  Neither has a residential address in Israel.

7.      The Yosef Brothers formed and served as members and managers of non-party Yosef 2019, LLC, a Maryland limited liability company with its principal place of business in Maryland.

8.      At all times material hereto, the Yosef Brothers were the alter ego of Yosef 2019 LLC, and, through it, acted in their own interest. The Yosef Brothers dominated and controlled Yosef 2019 LLC.  Plaintiffs believe that Yosef 2019 LLC commingled funds with the Yosef Brothers, failed to observe corporate formalities and was undercapitalized to such an extent that it effectively had no independent existence.

9.      Defendant Salazar Law, P.C. is a Maryland corporation with a principal place of business located at 600 Reisterstown Road, 7th Floor, Baltimore, Maryland 21208.

10.     Defendant Yosef Chaim Salazar is an attorney licensed to practice law in this state, having a principal place of business at 600 Reisterstown Road, 7th Floor, Baltimore, Maryland 21208. Together Salazar Law, P.C. and Yosef Chaim Salazar will be referred to hereinafter as the "Salazar Defendants."

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331, in that this case arises under federal law, and pursuant to 18 U.S.C. §1964(a), in that this case includes claims for civil RICO violations.

12.     Venue is proper in this district pursuant to 28 U.S.C. §1391, in that (1) a substantial part of the events and omissions giving rise to this action occurred in this district; (2) a substantial part of property that is the subject of the action is situated here; (3) defendants are subject to personal jurisdiction here with respect to this action and (4) defendants have consented to be sued here.

13.     Venue also is proper under 18 U.S.C. §1965(a), as defendants' agents are found in this district and defendants transact their affairs here. Moreover, the ends of justice require that the action be brought here, as demonstrated by the January 26, 2024 ruling of the Seventh Judicial Circuit Court of Florida, a true and correct copy of which is attached hereto as Exhibit "A," which recognized that the defendants are deemed to have stipulated to acceptance of service in this forum and that Baltimore County, Maryland is an appropriate forum to address disputes between these parties.

14.     This Court has personal jurisdiction over defendants in that they routinely and systematically engaged in business activities and tortious acts in this district and did so with respect to the plaintiffs in the relevant time period. Moreover, defendants have represented in pleadings filed in various courts that they are subject to personal jurisdiction here.

15.     While the Florida Court referenced above, in *dictum*, opined that the forum selection clause set forth in the sham partnership agreement executed by Yosef 2019, LLC and plaintiffs was valid, that conclusion (reached under the application of Florida law, rather than

4

Israeli law) is inapposite here where only tort claims are being asserted, where the defendants are the individual Yosef Brothers and the Salazar Defendants, and where plaintiffs are asserting that the partnership agreement is voidable as a result of the fraud and intentional misconduct of its signatories (the Yosef Brothers).

16.     Indeed, the Yosef Brothers themselves argued similarly to the Israeli court at paragraph 13 of a petition they filed with the Israeli court that they were "not parties of the agreement and therefore the jurisdiction clause [in the operating agreements involving non-party Yosef 2019 LLC] should not be applied to their case."  (English translation)

17.     They continued, "All facts unequivocally make it clear that there is no affinity with the Israeli courts and that the plaintiffs must litigate with the defendants in their domicile – United States. After all, in recent years the defendants have had no relation to Israel, the set of facts relevant to the claim was conducted entirely in the U.S., the entire real estate is in the U.S., as well as the signing of the partnership agreement. Conducting the proceedings in Israel will be cumbersome and inefficient and will constitute misuse of legal proceedings, since [the Yosef Brothers] have been joined to the statement of claim even though they are not parties of the partnership agreement."

## **FACTS**

18.     In November 2019, Carmeli met the Yosef Brothers in Baltimore, Maryland, upon a recommendation from a mutual business acquaintance. Carmeli and his colleagues were interested in real estate investments and the Yosef Brothers were seeking investors.

19.     At the meeting, the Yosef Brothers misrepresented that they were experts in the real estate market. Avi Yosef mispresented himself as a legitimate businessman acting as the "field man", i.e., the property locator and the person responsible for carrying out the renovations to

acquired properties, the day-to-day management of the business and lead negotiator for the Yosef Brothers. Chananel Yosef likewise mispresented himself as a legitimate businessman acting as the financier who would be responsible for banking issues, payments to employees and the like.

20.     Most of the interaction between Carmeli and the Yosef Brothers was through Avi Yosef, though both brothers made multiple misrepresentations to plaintiffs. The Yosef Brothers represented that there were many properties in poor physical condition for sale in the Baltimore area that could be renovated and sold for a profit.  They misled plaintiffs into believing that they intended to pursue legitimate business transactions, when in fact defendants intended all along to cheat, steal and divert monies that they obtained from others, including plaintiffs.

21.     The Yosef Brothers described the contemplated relationship as one in which plaintiffs would raise investor funds to be sent to a newly-formed Maryland LLC and that the Yosef Brothers likewise would inject their own capital contributions to fund a series of real estate flipping projects from which all parties would benefit in accordance with agreed-upon percentages.

22.     Following their meeting in Baltimore, Maryland, the Yosef Brothers continued their efforts to entice and induce plaintiffs and their investors to partner with them in the Baltimore real estate investment business by representing directly and through their agents that they had successfully engaged in the real estate flipping business in the past and that their deals would be structured so that each side, i.e. the Yosef Brothers and plaintiffs' investors, would contribute capital such that they would both have equity at risk or, as the American expression goes, 'skin in the game.' This was an essential element of the deal for plaintiffs and their investors.  They considered the mutual contribution of investment money as evidence of the Yosef Brothers' commitment and good intentions with respect to their future dealings.

23.     Further, Avi Yosef misrepresented that, as he found attractive properties in the Baltimore area, he would prepare and transmit a business report ("Deal Report") that accurately would set forth anticipated costs, revenues, purchase price and sale price concerning the properties to plaintiffs, which plaintiffs could rely upon in assessing whether to authorize investment funds to be used for the purpose of purchasing a particular property, renovating it and selling it for a profit.

24.     Among other things, the Yosef Brothers misled plaintiffs into believing that, after conducting due diligence, the investment entity to be formed by Carmeli and Boiman would be given adequate information to approve a purchase of property.

25.     To the contrary, the Deal Reports later misrepresented the information that plaintiffs relied upon in significant and material respects.

26.     As a result of the above, the Yosef Brothers successfully induced plaintiffs to enter into sham "partnership" agreements with them.

27.     Thus, Carmeli and Boiman created Baltimore 1 and solicited investors to fund its endeavors with the Yosef Brothers. In March 2020, Chananel Yosef created Zman Nadlan Baltimore LLC, as the first asset company ("Joint Asset LLC 1") purportedly for the joint business between the Yosef Brothers and Baltimore 1.

28.     Under the purported terms of the initial sham agreement, which the Yosef Brothers never intended to follow, Baltimore 1 was to provide 85% of the equity for the venture with the Yosef Brothers, through Yosef 2019 LLC, responsible for investment of the remaining 15%. The parties' sham agreement also specified that the parties would split the profits of real estate sales evenly, though Baltimore 1 and Baltimore Management were to share a 17.5% annual return out of the distribution of profits (the "Preference").

29.     The Yosef Brothers misrepresented that Baltimore 1, Baltimore 2, Baltimore 3 and Nofim and Baltimore Management (the manager of Baltimore 1, 2 and 3 described above) would receive additional moneys in accordance with particular formulas set forth in the initial sham agreement and subsequent sham documents generated thereafter.  To the contrary, the Yosef Brothers never intended to make these payments and, as described more fully below, diverted most of the funds to their own use.

BALTIMORE 1

30.     Beginning in March 2020, in reliance on defendants' ongoing misrepresentations, Baltimore 1 was induced to contribute $850,000 to Joint Asset LLC 1.  The Yosef Brothers contributed $150,000. Over a period of 8 months, Joint Asset LLC 1 purchased six properties (Properties numbered 1 to 6 listed on Exhibit B attached hereto) for renovation and resale purposes.

31.     Ostensibly in order to facilitate a quick purchase of a property at 4312 Rokeby Road, Baltimore ("Rokeby") which was already under contract with Yosef 2019 LLC (and which closed on March 9, 2020), the Yosef Brothers made the first contribution toward the joint business.

32.     Yosef 2019 LLC purchased the first property before Joint Asset LLC 1 was formed and used that as an excuse to vest title in Yosef 2019 LLC until the sale of the same property.

33.     On March 25, 2020, Baltimore 1 paid $83,677 to Yosef 2019 LLC and $85,000 to Asset LLC 1 for renovations through interstate wire, in reliance upon the Yosef Brothers' representation that that amount represented Baltimore 1's pro rata share of the purchase price of the Rokeby property.

34.     Thereafter, Baltimore 1 continued to send funds by interstate wire to Joint Asset LLC 1 or to its escrow agent and/or title company for future purchases made by Joint Asset LLC

1. And as each property was anticipated for purchase, sham Deal Reports were provided to plaintiffs for their approval.

35.     The Rokeby sale (for $265,000) occurred on September 23, 2020, at which time the Yosef Brothers presented Baltimore 1 with a false demonstration of "profits," intended to induce plaintiffs to make future contributions and/or approve future properties for investment.  They misrepresented that the sale price was higher in order to mislead plaintiffs into thinking that the transaction was a profitable one.  They distributed $46,135 to plaintiffs to advance the scheme even though the amount earned from the transaction should have been much smaller.

36.     The Yosef Brothers misrepresented the property value, the sale price and the amount of profit made from the resale of the Rokeby property. The Yosef Brothers deliberately overstated the amount of profit to induce plaintiffs into thinking that the transaction was a profitable one so that plaintiffs would raise additional funds for future transactions. Plaintiffs were in fact so induced.  They would not have continued to invest funds if the accurate amount of profit had been reported to them.

37.     Plaintiffs likewise discovered that the Yosef Brothers extracted their own capital contribution from the initial first sale of Rokeby while the entire capital contribution of Baltimore 1 was locked in the business of Joint Asset LLC 1. Defendants also used Baltimore 1 funds to pay expenses unrelated to the Rokeby property. Neither Baltimore Management nor Carmeli were informed about the Yosef Brothers' actions, nor did they consent to those actions.

38.     Each of the other five Baltimore 1 projects was later discovered to have been the target of fraudulent conduct by the Yosef Brothers (and in some instances aided by the Salazar Defendants and others) as further described below.

39.     For example, the Yosef Brothers through interstate wire communications misrepresented to plaintiffs that the negotiated purchase price of the 1607 Race Street property was $115,000, when in fact it was far less.  By misrepresenting the inflated purchase price, the Yosef Brothers obtained additional funds from plaintiffs to which they were not entitled.

40.     As of the date of this Complaint, all Joint Asset LLC 1 properties have been sold. Other than an initial distribution from the Rokeby sale referenced above, the Yosef Brothers made only one small distribution ($22,690) from the sale of one of the other five properties (207 Heath). Although all the properties were sold, in the amount of approximately $1.4 million, Joint Asset LLC 1 distributed no money to Baltimore 1, whether in the form of net sale proceeds or return of equity.  Rather, those funds were fraudulently transferred by the Yosef Brothers to their own personal use.

NOFIM

41.     Beginning in September 2020, in reliance on the Yosef Brothers' continuing misrepresentations, Nofim contributed $430,000 to H&RCA Group LLC ("Joint Asset LLC 2"), and the Yosef Brothers ostensibly contributed approximately $76,000.

42.     Over a period of 3 months, Joint Asset LLC 2 purchased 2 properties (Properties numbered 7 and 8 listed on Exhibit B attached hereto) for renovation and resale purposes. To induce plaintiffs to approve each such purchase, the Yosef Brothers continued to provide Deal Reports in advance of the purchases. The contributions of Nofim were paid by interstate wire to Joint Asset LLC 2 or to the escrow agent for purchases made by Joint Asset LLC 2.  Those properties subsequently were sold for approximately $687,000.

43.     Plaintiffs discovered in 2022 that the Yosef Brothers took their own capital contribution from the sale of the Joint Asset LLC 2 properties, but none of the capital contributions and profit anticipated by Nofim were distributed. Neither Baltimore Management nor Carmeli were informed about this act and did not consent to it.  As a result, plaintiffs lost all but $200,000 of the funds they were induced to pay to defendants. It was only after the dispute arose that Baltimore Management was able to get a partial repayment of Nofim's capital contribution from the Yosef Brothers in the amount of $200,000 that was directly paid to Nofim's sole member. No other distributions were made, and the Yosef Brothers have wrongfully taken the balance of the capital and profits of Joint Asset LLC 2.

BALTIMORE 2

44.     Beginning in September 2020, Baltimore 2 contributed $500,000 to Baltimore Rentals 2020 LLC ("Joint Asset LLC 3"), and the Yosef Brothers contributed approximately $88,000. Over a period of 3 months, Joint Asset LLC 3 purchased 7 properties (Properties number 9 to 15 listed on Exhibit B attached hereto) for rental, hold and finance purposes. To induce plaintiffs to approve each such purchase, the Yosef Brothers continued to provide Deal Reports in advance of the purchases. The contributions of Baltimore 2 were wired to Joint Asset LLC 3 or to the escrow agent for purchases made by Joint Asset LLC 3.

45.     Plaintiffs discovered in 2022 that properties numbered 11 to 15 on Exhibit B were never actually purchased by Joint Asset LLC 3, although the purchase price for such properties was paid by interstate wire to the escrow agent and then released to the Yosef Brothers or to third parties at the direction of the Yosef Brothers.

46.     Plaintiffs subsequently discovered that the owners of these five properties were actually colleagues and family members of the Yosef Brothers, or other companies they personally owned, including an entity known as Elimor Properties, whose sole member is Avi Yosef. The Yosef Brothers did not inform Baltimore 2, Baltimore Management or Carmeli that the properties were indirectly owned by them (there were no third-party appraisals done, and the sale prices were not arm's length market prices) or that the purchase transactions were never completed, and the funds were removed from escrow with Salazar's knowledge and without Baltimore Management's or Carmeli's consent.

47.     As of the date hereof, all Joint Asset LLC 3 properties as well as properties 11 to 15 have been sold to third parties, some of which, upon information and belief, are associates of the Yosef Brothers, giving rise to questions about the accuracy of the sale prices.  The aggregate sale price for those properties was in excess of $700,000.

48.     Upon information and belief, the Yosef Brothers extracted their own capital contribution from the sale of the Joint Asset LLC 3 properties and/or from rents received on the properties prior to their sale, while none of the capital contribution and profit anticipated by Baltimore 2 was distributed. There has been no accounting of the funds of Joint Asset LLC 3 by the Yosef Brothers.

BALTIMORE 3

49.     Beginning in March 2021, Baltimore 3 contributed $850,000 to Zman Nadlan 2 LLC ("Joint Asset LLC 4") and the Yosef Brothers contributed approximately $30,000, less than the requisite 15% amount of $150,000. Over a period of 3 months, Joint Asset LLC purchased 3 properties numbered 16 to 18 on Exhibit B attached hereto for renovation and resale purposes. To

induce plaintiffs to approve each such purchase, the Yosef Brothers continued to provide Deal Reports in advance of the purchases. The contributions of Baltimore 3 were wired to Joint Asset LLC 4 or to its escrow agent for purchases made by Joint Asset LLC 4.

50.     Plaintiffs subsequently discovered that the Yosef Brothers failed to make the full amount of capital contribution as committed, and as noted above, a fact fraudulently concealed by the Yosef Brothers from Baltimore Management and Carmeli.

51.     As of the date hereof, all Joint Asset LLC 4 properties have been sold without Baltimore Management's or Carmeli's knowledge or consent, to third parties. Some of those third-party buyers are, upon information and belief, associates of the Yosef Brothers, giving rise to questions as to the accuracy of the sale prices.

52.     Upon information and belief, the Yosef Brothers extracted their own capital contribution from the sale of the Joint Asset LLC 4 properties while none of the capital contribution and profit anticipated by Baltimore 3 was distributed. Upon information and belief, the Yosef Brothers have wrongfully taken the balance of the funds of Joint Asset LLC 4.

AFTERMATH

53.     Induced by and in further reliance on the Yosef Brothers' ongoing misrepresentations, plaintiffs continued to invest with the Yosef Brothers and opened Baltimore 2, Baltimore 3 and Nofim.  Over the two years that followed, plaintiffs and the Yosef Brothers continued working together and raised additional funds for a total of over $2,700,000, all of which plaintiffs invested with the Yosef Brothers for the purchase and renovation of additional properties.

54.     Sometime thereafter, Carmeli sensed a lack of transparency regarding project expenses and extreme overages in budgeted renovation costs. Despite requests made to the Yosef

Brothers to provide supporting documentation, the Yosef Brothers failed to respond. It is believed that funds of the investments were commingled with funds of their other entities and relating to other transactions and were improperly directed.

55.     The Yosef Brothers have converted plaintiffs' invested capital to their own benefit and taken management action without informing or acquiring the consent of the plaintiffs, including as to the sale of properties. Upon information and belief, the Yosef Brothers have also made false representations to buyers and to title agents and executed false affidavits and other documents stating that Yosef 2019 LLC or the Yosef Brothers are sole members and or sole managers of Joint Asset LLC 1, Joint Asset LLC 2, Joint Asset LLC 3 and Joint Asset LLC 4.

56.     The Yosef Brothers have diverted to their own benefit the profit splits that they represented that they would allocate to the plaintiffs, improperly withholding plaintiffs' properties and funds.

57.     Upon information and belief, the Yosef Brothers have used and taken plaintiffs' properties and funds for their own benefit.

58.     In the course of their scheme, defendants converted to their own benefit in excess of $2.4 million to which they had no right and in which they had no valid interest and did so without disclosing those distributions to plaintiffs.  The full amount of such conversions is still being investigated.  Defendants did so after having induced plaintiffs to invest over $2.6 million, distributing only $285,229 of that investment back to plaintiffs before cutting off all distributions and taking the rest of the money for their own benefit without any authority or permission.

59.     Upon information and belief, the Yosef Brothers have diverted plaintiffs' investment funds to their newly formed Florida limited liability companies (in which plaintiffs have no interest), AYCI Holdings LLC, 2735 Queen City LLC, 407 Harvey LLC, Nanah LLC,

111 Grandview DB LLC, 735 North Atlantic DB LLC, 709 Butler LLC, 1215 N Atlantic DB LLC and CKDB Holdings LLC, through other straw companies that are part of the Yosef Brothers' enterprise.

60.     Plaintiffs believe that defendants' enterprise has engaged in other, similar schemes in Florida and elsewhere, targeting victims other than plaintiffs.

61.     As set forth above, defendants have converted entity funds and have directed entity funds without the knowledge or consent of plaintiffs. Although plaintiffs do not know exactly where defendants have sent the property sale and rent proceeds, the proceeds have not been distributed to plaintiffs as the Yosef Defendants had represented they would. As set forth above, defendants have purposely misdirected sale proceeds from one entity to others, thereby dissipating the value of the original entity to investors' detriment.

62.     The Yosef Brothers' diversion of plaintiffs' investments was undertaken with the aid and assistance of others, including the Salazar Defendants, who, at the direction of the Yosef Brothers and with respect to the approximately thirteen (13) purchase and sale transactions occurring in Baltimore County, Maryland and which are the subject of this lawsuit, improperly directed investor payments which were to be held in escrow on plaintiffs' account and/or released investment funds and/or sales proceeds which should have been distributed to plaintiffs directly to the Yosef Brothers, and further, knowingly permitted the transactions to occur or funds to be distributed to the exclusion of plaintiffs and their interests, among other things.

63.     Plaintiffs initially filed suit in Israel against the Yosef Brothers and the Yosef 2019 LLC. However, the Yosef Brothers contested the Israeli court's jurisdiction and maintained that the Yosef Brothers solely were amenable to jurisdiction within the United States. Plaintiffs then filed suit in the United States (in the state of Florida where defendants reside), only to find that the

Yosef Brothers filed their own suit in Israel, alleging in response to the Florida action that jurisdiction was proper only in Israel.  As noted above, the Florida court ruled that defendants are deemed to have stipulated to acceptance of service in this forum and that Baltimore County, Maryland is an appropriate forum to address disputes between these parties. Plaintiffs have no doubt that defendants' legal shenanigans and forum shopping will continue if not stopped by this Court.

## COUNT I - CONVERSION
(Baltimore Flips Israel 2020 LLC vs. Defendants)

64.     Plaintiff Baltimore Flips Israel 2020 LLC incorporates by reference all preceding paragraphs as if fully set forth herein.

65.     Defendants have knowingly and willfully converted to their own use the funds and property of plaintiff Baltimore Flips Israel 2020 LLC, for their own benefit and that of their LLCs.

66.     Defendants' actions have deprived plaintiff Baltimore Flips Israel 2020 LLC of its funds, property, and ownership interests.

67.     As a direct and proximate result of defendants' actions, plaintiff Baltimore Flips Israel 2020 LLC has suffered damages.

WHEREFORE, plaintiff Baltimore Flips Israel 2020 LLC demands judgment against defendants, jointly and severally, for compensatory and punitive damages equal to the amount of the misappropriated funds, together with prejudgment interest, costs and such other relief as the Court deems just and proper.

## COUNT II - CONVERSION
(Nofim LLC vs. Defendants)

68.     Plaintiff Nofim LLC incorporates by reference all preceding paragraphs as if fully set forth herein.

69.     Defendants have knowingly and willfully converted to their own use the funds and property of plaintiff Nofim LLC, for the benefit of themselves and their LLCs.

70.     Defendants' actions have deprived plaintiff Nofim LLC of its funds, property, and ownership interests.

71.     As a direct and proximate result of defendants' actions, plaintiff Nofim LLC has suffered damages.

WHEREFORE, plaintiff Nofim LLC demands judgment against defendants, jointly and severally, for compensatory and punitive damages equal to the amount of the misappropriated funds, together with prejudgment interest, costs and such other relief as the Court deems just and proper.

COUNT III - CONVERSION
(Baltimore Flips Israel 2 LLC vs. Defendants)

72.     Plaintiff Baltimore Flips Israel 2 LLC incorporates by reference all preceding paragraphs as if fully set forth herein.

73.     Defendants have knowingly and willfully converted to their own use the funds and property of plaintiff Baltimore Flips Israel 2 LLC, for the benefit of themselves and their LLCs.

74.     Defendants' actions have deprived plaintiff Baltimore Flips Israel 2 LLC of its funds, property and ownership interests.

75.     As a direct and proximate result of defendants' actions, plaintiff Baltimore Flips Israel 2 LLC has suffered damages.

WHEREFORE, plaintiff Baltimore Flips Israel 2 LLC demands judgment against defendants, jointly and severally, for compensatory and punitive damages equal to the amount of the misappropriated funds, together with prejudgment interest, costs and such other relief as the Court deems just and proper.

## COUNT IV - CONVERSION
### (Baltimore Flips 2 Israel 2020 LLC vs. Defendants)

76.     Plaintiffs Baltimore Flips 2 Israel 2020 LLC incorporates by reference all preceding paragraphs as if fully set forth herein.

77.     Defendants have knowingly and willfully converted to their own use the funds and property of plaintiff Baltimore Flips 2 Israel 2020 LLC, for the benefit of themselves and their LLCs.

78.     Defendants' actions have deprived plaintiff Baltimore Flips 2 Israel 2020 LLC of its funds, property and ownership interests.

79.     As a direct and proximate result of defendants' actions, plaintiff Baltimore Flips Israel 2020 LLC has suffered damages.

WHEREFORE, plaintiff Baltimore Flips Israel 2020 LLC demands judgment against defendants, jointly and severally, for compensatory and punitive damages equal to the amount of the misappropriated funds, together with prejudgment interest, costs and such other relief as the Court deems just and proper.

## COUNT V - CONVERSION
### (Baltimore Flips Management 2020 LLC vs. Defendants)

80.     Plaintiff Baltimore Flips Management 2020 LLC incorporates by reference all preceding paragraphs as if fully set forth herein.

81.     Defendants have knowingly and willfully converted to their own use the funds and property of plaintiff Baltimore Flips Management 2020 LLC, for the benefit of themselves and their LLCs.

82.     Defendants' actions have deprived plaintiff Baltimore Flips Management 2020 LLC of its funds, property and ownership interests.

83.     As a direct and proximate result of defendants' actions, plaintiff Baltimore Flips Management 2020 LLC has suffered damages.

WHEREFORE, Plaintiff Baltimore Flips Management 2020 LLC demands judgment against defendants, jointly and severally, for compensatory and punitive damages equal to the amount of the misappropriated funds, together with prejudgment interest, costs and such other relief as the Court deems just and proper.

COUNT VI – FRAUD
(Baltimore Flips Israel 2020 LLC vs. Defendants)

84.     Plaintiff Baltimore Flips Israel 2020 LLC incorporates by reference all preceding paragraphs as if fully set forth herein.

85.     As alleged above, defendants repeatedly made misrepresentations of fact to plaintiff Baltimore Flips Israel 2020 LLC and fraudulently omitted material facts that they had a duty to disclose.

86.     Plaintiff relied to its detriment upon those misrepresentations and fraudulent omissions when it entered into the sham agreements, subsequently invested in properties as alleged above and continued to do business with defendants.

87.     As a proximate result of such reliance, plaintiff suffered damages through the loss of money and business opportunities.

88.     Defendants acted intentionally and maliciously to cheat plaintiff out of its investments.

WHEREFORE, plaintiff Baltimore Flips Israel 2020 LLC demands judgment against defendants, jointly and severally, rescinding the sham partnership agreements and awarding

compensatory and punitive damages equal to the amount of the misappropriated funds, together with prejudgment interest, costs and such other relief as the Court deems just and proper.

## COUNT VII – FRAUD
### (Nofim LLC vs. Defendants)

89.     Plaintiff Nofim LLC incorporates by reference all preceding paragraphs as if fully set forth.

90.     As alleged above, defendants repeatedly made misrepresentations of fact to plaintiff Nofim LLC and fraudulently omitted material facts that they had a duty to disclose.

91.     Plaintiff Nofim LLC relied to its detriment upon those misrepresentations and fraudulent omissions when it entered into the sham agreements, subsequently invested in properties as alleged above and continued to do business with defendants.

92.     As a proximate result of such reliance, plaintiff Nofim LLC suffered damages through the loss of money and business opportunities.

93.     Defendants acted intentionally and maliciously to cheat plaintiff Nofim LLC out of its investments.

WHEREFORE, plaintiff Nofim LLC demands judgment against defendants, jointly and severally, rescinding the sham partnership agreements and awarding compensatory and punitive damages equal to the amount of the misappropriated funds, together with prejudgment interest, costs and such other relief as the Court deems just and proper.

## COUNT VIII – FRAUD
### (Baltimore Flips Israel 2 LLC vs. Defendants)

94.     Plaintiff Baltimore Flips Israel 2 LLC incorporates by reference all preceding paragraphs ss if fully set forth herein.

20

95.    As alleged above, defendants repeatedly made misrepresentations of fact to plaintiff Baltimore Flips Israel 2 LLC and fraudulently omitted material facts that they had a duty to disclose.

96.    Plaintiff relied to its detriment upon those misrepresentations and fraudulent omissions when it entered into the sham agreements, subsequently invested in properties as alleged above and continued to do business with defendants.

97.    As a proximate result of such reliance, plaintiff suffered damages through the loss of money and business opportunities.

98.    Defendants acted intentionally and maliciously to cheat plaintiff out of its investments.

WHEREFORE, plaintiff Baltimore Flips Israel 2 LLC demands judgment against defendants, jointly and severally, rescinding the sham partnership agreements and awarding compensatory and punitive damages equal to the amount of the misappropriated funds and property, together with prejudgment interest, costs and such other relief as the Court deems just and proper.

## COUNT IX – FRAUD
### (Baltimore Flips 2 Israel 2020 LLC v. Defendants)

99.    Plaintiff Baltimore Flips 2 Israel 2020 LLC incorporates by reference all preceding paragraphs as if fully set forth herein.

100.    As alleged above, defendants repeatedly made misrepresentations of fact to plaintiff Baltimore Flips Israel 2 Israel 2020 LLC and fraudulently omitted material facts that they had a duty to disclose.

101.    Plaintiff relied to its detriment upon those misrepresentations and fraudulent omissions when it entered into the sham agreements, subsequently invested in properties as alleged above and continued to do business with defendants.

102.    As a proximate result of such reliance, plaintiff suffered damages through the loss of money and business opportunities.

103.    Defendants acted intentionally and maliciously to cheat plaintiff out of its investments.

WHEREFORE, plaintiff Baltimore Flips 2 Israel 2020 LLC demands judgment against defendants, jointly and severally, rescinding the sham partnership agreements, and awarding compensatory and punitive damages equal to the amount of the misappropriated funds and property, together with prejudgment interest, costs and such other relief as the Court deems just and proper.

COUNT X –FRAUD
(Baltimore Flips Management 2020 LLC vs. Defendants)

104.    Plaintiff Baltimore Flips Management 2020 LLC incorporates by reference all preceding paragraphs as if fully set forth herein.

105.    As alleged above, defendants repeatedly made misrepresentations of fact to plaintiff Baltimore Flips Management 2020 LLC and fraudulently omitted material facts that they had a duty to disclose.

106.    Plaintiff relied to its detriment upon those misrepresentations and fraudulent omissions when it entered into the sham agreements, subsequently invested in properties as alleged above and continued to do business with defendants.

107.    As a proximate result of such reliance, plaintiff suffered damages through the loss of money and business opportunities.

108.   Defendants acted intentionally and maliciously to cheat plaintiff out of its investments.

WHEREFORE, plaintiff Baltimore Flips Management 2020 LLC demands judgment against defendants, jointly and severally, rescinding the sham partnership agreements and awarding compensatory and punitive damages equal to the amount of the misappropriated funds and property, together with prejudgment interest, costs and such other relief as the Court deems just and proper.

## COUNT XI – CONSPIRACY
(Baltimore Flips Israel 2020 LLC vs. Defendants)

109.   Plaintiff Baltimore Flips Israel 2020 LLC incorporates by reference all preceding paragraphs as if fully set forth herein.

110.   Defendants, in conjunction with Yosef 2019 LLC, the Salazar Defendants and other unnamed co-conspirators, conspired in furtherance of the effort to convert plaintiff's funds and to defraud plaintiff in the manner alleged.

111.   As a proximate result of such conspiracy, plaintiff suffered damages through the loss of money and business opportunities.

WHEREFORE, plaintiff Baltimore Flips Israel 2020 LLC demands judgment against defendants, jointly and severally, for compensatory and punitive damages equal to the amount of the misappropriated funds, together with prejudgment interest, costs and such other relief as the Court deems just and proper.

## COUNT XII – CONSPIRACY
(Nofim LLC vs. Defendants)

112.   Plaintiff Nofim LLC incorporates by reference all preceding paragraphs as if fully set forth herein.

113.    Defendants, in conjunction with Yosef 2019 LLC, the Salazar Defendants and other unnamed co-conspirators, conspired in furtherance of the effort to convert plaintiff's funds and to defraud plaintiff in the manner alleged.

114.    As a proximate result of such conspiracy, plaintiff suffered damages through the loss of money and business opportunities.

WHEREFORE, plaintiff Nofim LLC demands judgment against defendants, jointly and severally, for compensatory and punitive damages equal to the amount of the misappropriated funds, together with prejudgment interest, costs and such other relief as the Court deems just and proper.

## COUNT XIII – CONSPIRACY
### (Baltimore Flips Israel 2 LLC vs. Defendants)

115.    Plaintiff Baltimore Flips Israel 2 LLC incorporates by reference all preceding paragraphs as if fully set forth herein.

116.    Defendants, in conjunction with Yosef 2019 LLC, the Salazar Defendants and other unnamed co-conspirators, conspired in furtherance of the effort to convert plaintiff's funds and to defraud plaintiff in the manner alleged.

117.    As a proximate result of such conspiracy, plaintiff suffered damages through the loss of money and business opportunities.

WHEREFORE, plaintiff Baltimore Flips Israel 2 LLC demands judgment against defendants, jointly and severally, for compensatory and punitive damages equal to the amount of the misappropriated funds, together with prejudgment interest, costs and such other relief as the Court deems just and proper.

## COUNT XIV – CONSPIRACY
### (Baltimore Flips 2 Israel 2020 LLC vs. Defendants)

118.    Plaintiff Baltimore Flips 2 Israel 2020 LLC incorporates by reference all preceding paragraphs as if fully set forth herein.

119.    Defendants, in conjunction with Yosef 2019 LLC, the Salazar Defendants and other unnamed co-conspirators, conspired in furtherance of the effort to convert plaintiff's funds and to defraud plaintiff in the manner alleged.

120.    As a proximate result of such conspiracy, plaintiff suffered damages through the loss of money and business opportunities.

WHEREFORE, plaintiff Baltimore Flips 2 Israel 2020 LLC demands judgment against defendants, jointly and severally, for compensatory and punitive damages equal to the amount of the misappropriated funds, together with prejudgment interest, costs and such other relief as the Court deems just and proper.

## COUNT XV – CONSPIRACY
### (Baltimore Flips Management 2020 LLC vs. Defendants)

121.    Plaintiff Baltimore Flips Management 2020 LLC incorporates by reference all preceding paragraphs as if fully set forth herein.

122.    Defendants, in conjunction with Yosef 2019 LLC, the Salazar Defendants and other unnamed co-conspirators, conspired in furtherance of the effort to convert plaintiff's funds and to defraud plaintiff in the manner alleged.

123.    As a proximate result of such conspiracy, plaintiff suffered damages through the loss of money and business opportunities.

WHEREFORE, plaintiff Baltimore Flips Management 2020 LLC demands judgment against defendants, jointly and severally, for compensatory and punitive damages equal to the

amount of the misappropriated funds, together with prejudgment interest, costs and such other relief as the Court deems just and proper.

COUNT XVI – RICO §1962(c)
<u>(All Plaintiffs vs. Defendants)</u>

124.    Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

125.    Each defendant is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. §1961(3).

126.    Each defendant violated 18 U.S.C. §1962(c) by the acts described in the prior paragraphs and as further described below.

127.    Each defendant participated in a joint "enterprise" as that term is used in 18 U.S.C. §1961(4), engaging in a pattern of racketeering activity affecting interstate and foreign commerce, with each person and entity having a role in the enterprise (hereafter, the "Yosef Enterprise").

128.    The Yosef Enterprise consisted of defendants and their alter egos, Yosef 2019 LLC, their Florida LLCs, including AYCI Holdings LLC, 2735 Queen City LLC, 407 Harvey LLC, Nanah LLC, 111 Grandview DB LLC, 735 North Atlantic DB LLC, 709 Butler LLC, 1215 N Atlantic DB LLC and CKDB Holdings LLC, as well as the Salazar Defendants, and associate/buyers of defendants such as Elimor Properties used to commit the fraudulent activities described above.

129.    The Yosef Enterprise solicited investors throughout the United States and across multiple states and foreign countries, and transacted business through the use of the United States mail and interstate telephone and Internet wires.

130.    The Yosef Brothers are separate and distinct from the Yosef Enterprise, but unlawfully used the Yosef Enterprise as a vehicle through which unlawful activity was committed.

131.    The Yosef Enterprise functioned as a continuing unit with an ascertainable structure separate and distinct from the individual defendants employed by or associated with the Yosef Enterprise.

132.    Each defendant engaged in that pattern of racketeering activity for the unlawful purpose of intentionally defrauding plaintiffs. Defendants regularly and repeatedly used the facilities and services of the Yosef Enterprise with the specific intent of committing RICO violations alleged herein.

133.    A common and shared purpose of the Yosef Enterprise was to deceive investors and others regarding their intentions and their actions and to fraudulently obtain funds from the investors and others..

134.    The Yosef Enterprise, through defendants, committed hundreds of predicate acts of wire fraud, in violation of 18 U.S.C. §1343, and mail fraud, in violation of 18 U.S.C. §1341, directly and indirectly, and aided and abetted such acts, for the purpose of advancing the fraudulent concealment and deliberate misconduct alleged above.

135.    Each of the participants in the Yosef Enterprise knew that the documents they were sending through the mail and over wires included material misrepresentations and fraudulently omitted material facts, with the specific intent and purpose of executing a scheme or artifice.

136.    Moreover, defendants, through the Yosef Enterprise, committed acts constituting indictable offenses under 18 U.S.C. §2314 in that, having devised or intended to devise a scheme or artifice to defraud plaintiffs or to obtain money from plaintiffs by means of false or fraudulent pretenses, representations or promises, they transported or caused to be transported in interstate commerce money having a value of $5,000 or more, which was stolen, converted or taken by fraud.

137.    The Yosef Enterprise also committed acts constituting indictable offenses under 18 U.S.C. §2315, in that they received money in excess of $5,000, which crossed a state boundary after being stolen, unlawfully converted or taken.

138.    These acts were done willfully and with knowledge that the money was stolen, converted or taken by fraud, and with the specific intent to advance the Yosef Enterprise's scheme or artifice.

139.    In particular, the Yosef Enterprise, through defendants, stole, converted and took by fraud investment funds and proceeds of sales of the foregoing properties.

140.    Plaintiffs also believe that the Yosef Enterprise, through defendants, violated 18 U.S.C. §1956, relating to laundering of monetary instruments.

141.    These acts were not isolated, but rather were related, in that they had the same or similar purpose and result, participants, victims and methods of commission.  They were designed to work in conjunction with each other to assist defendants and the Yosef Enterprise in diverting funds and duping investors into making or perpetuating their investments.

142.    Their criminal actions victimized not only Carmeli, Boyman and the plaintiff entities, but also the many investors in those entities, who likewise relied on defendants' misrepresentations and deceitful actions.

143.    Those acts have been continuous, during a time period extending from 2020 through the present, and there is a continuing threat of repetition of such conduct.

144.    Those acts have been continuous, involving the purchase and sale of eighteen distinct investment properties over a time period extending at least 26 months, from the beginning of 2020 through at least March of 2022.  Plaintiffs believe that the last of their investment properties were sold by the end of that period and that the Yosef Enterprise is continuing to use

plaintiffs' funds to undertake similar flipping activities in Florida. There is a continuing threat of repetition of such conduct.

WHEREFORE, plaintiffs demand judgment against each of the defendants, jointly and severally, for compensatory, treble and punitive damages, together with pre-judgment interest, attorneys' fees, costs, and such other relief as the Court deems just and proper.

COUNT XVII – RICO §1962(d)
<u>(All Plaintiffs vs. Defendants)</u>

145.    Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

146.    In violation of 18 U.S.C. §1962(d), the Yosef Enterprise knowingly, willfully and unlawfully conspired to facilitate a scheme which included the operation and management of a RICO enterprise through the pattern of racketeering activity set forth above.

147.    The conspiracy commenced in 2020 and is ongoing.

148.    Specifically, the Yosef Enterprise conspired to conceal the true nature of their activities through mail and wire fraud, and committed overt acts to conceal, divert and misappropriate funds in which plaintiffs had an interest.

149.    Such conduct constitutes conspiracy to violate 18 U.S.C. §1962(c) in violation of 18 U.S.C. §1962(d).

150.    As a direct and proximate result of defendants' conspiracy with the Yosef Enterprise, and the overt acts taken in furtherance thereof and in violation of 18 U.S.C. 1962(d), plaintiffs have suffered millions of dollars in damages.

WHEREFORE, plaintiffs demand judgment against each of the defendants, jointly and severally, for compensatory, treble and punitive damages, together with pre-judgment interest, attorneys' fees, costs, and such other relief as the Court deems just and proper.

Dated: May 17, 2024

BOYLE & JASARI

By: /s/ *Dennis Boyle*

Dennis Boyle, Bar No. 07216
dboyle@boylejasari.com
400 E. Pratt Street, 8th Floor
Baltimore, MD 21202
Telephone:     (771) 217-2400
Facsimile:     (410) 580-3001

Sima G. Fried, Bar No. 03564
DLA PIPER LLP (US)
sima.fried@us.dlapiper.com
650 S Exeter Street, Suite 1100
Baltimore, MD  21202-4576
Telephone:   (410) 580-3000
Facsimile:   (410) 580-3001

Marc J. Zucker (*pro hac vice* anticipated)
mzucker@wgpllp.com
Amy R. Brandt (*pro hac vice* anticipated)
abrandt@wgpllp.com
WEIR GREENBLATT PIERCE LLP
The Widener Building
1339 Chestnut Street, Suite 500
Philadelphia, PA 19107
Telephone & Fax: (215) 241-7792

*Attorneys for Plaintiffs*

Exhibit A – Florida ruling

IN THE CIRCUIT COURT SEVENTH
JUDICIAL CIRCUIT IN AND FOR
VOLUSIA COUNTY, FLORIDA

CASE NO.: 2023 31675 CICI
DIVISION: 32

BALTIMORE FLIPS ISRAEL 2020 LLC,
NOFIM LLC, BALTIMORE FLIPS ISRAEL 2 LLC,
BALTIMORE FLIPS 2 ISRAEL 2020 LLC,
and BALTIMORE FLIPS
MANAGEMENT 2020 LLC,

                Plaintiffs,

v.

CHANANEL YOSEF, AVI ABRAHAM
YOSEF, AYCI HOLDINGS LLC, 2735
QUEEN CITY LLC, 407 HARVEY LLC,
NANAH LLC, 111 GRANDVIEW DB LLC,
735 N ATLANTIC DB LLC, 709 BUTLER
LLC, 1215 N ATLANTIC DB LLC, and
CKDB HOLDINGS LLC,

                Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

       **THIS CAUSE** came before the Court on September 6, 2023 and November 29, 2023 on

Defendants' Motion to Dismiss filed on June 12, 2023 (Dckt. No. 33).  Having reviewed the

motion, the responses in opposition, and the court file, heard testimony and argument from

counsel, considered the post-hearing submissions by the parties, and being otherwise fully advised

in the premises, the Court finds as follows:

       1.       On May 3, 2023, Plaintiffs filed a fifteen count Supplemental Amended Complaint,

seeking relief in damages for five counts of conversion, five counts of constructive fraud, and five

counts of breach of duty of loyalty.   (Dckt. No. 4).

2.    These allegations arise out of a dispute over monies involving the purchase and sale of properties located in Baltimore County, Maryland stemming from a Partnership Agreement signed by Plaintiffs and Yosef 2019, LLC,  a limited liability company formed by Defendants Chananel Yosef and Avi Abraham Yosef.

3.    Prior to this litigation, two lawsuits were filed by some of the Plaintiffs; the first filed in Israel, and the second filed in Maryland in April 2022 which was dismissed in October 2022 on procedural grounds.

4.    Defendants seek dismissal of this action based upon improper venue, forum non conveniens, and lack of personal jurisdiction.

5.    This Court conducted two hearings on the motion, the first absorbed by venue and the applicability of the forum selection clause contained in the Partnership Agreement, and the second, an evidentiary hearing, on the issue of forum non conveniens.

FINDINGS OF FACT AND CONCLUSIONS OF LAW

Defendants argue that the forum selection clause controls and that this cause of action must be heard in the Tel Aviv district court.  Defendants alternatively contend that should the forum selection clause not control, under the doctrine of forum non conveniens, the appropriate forum is in Baltimore County, Maryland.

I.    Forum Selection Clause

The Partnership Agreement surrounding this lawsuit was signed by Plaintiffs and Yosef 2019, LLC,  a limited liability company formed by Defendants Chananel Yosef and Avi Abraham Yosef, and includes a forum selection clause.  That clause (as translated from Hebrew to English) provides, "This agreement shall be subject to the laws of the State of Israel, and will be interpreted accordingly.  Unique and exclusive jurisdiction with respect to any matter related to this

2

Agreement will vest exclusively in the Tel Aviv District Court, and no other court shall have jurisdiction." Dckt. No. 4 at 33.

Plaintiffs contend that the forum selection clause is not controlling.  According to Plaintiffs, because Yosef 2019, LLC is the entity bound by the Partnership Agreement, and Defendants Chananel and Avi Yosef did not individually sign the Partnership Agreement.  Thus, applying Israeli law, as non-signatories, they cannot be bound by the forum selection clause in the agreement.  Plaintiffs offered the testimony of Gabriel Freedman, who testified regarding Israeli case law on forum selection clauses.  Defendants counter that under Florida law, forum selection clauses can bind non-signatories where the claims arise directly out of the agreement and the commercial relationship of the parties.   The Court agrees with Defendants.

In determining the validity of a form selection clause for purposes of establishing venue, the law of the forum applies, rather than the law selected by the parties  *Kerr Const., Inc. v. Peters Contracting, Inc.*, 767 So. 2d 610, 612 (Fla. 5th DCA 2000*); Fendi S.r.l. v. Condotti Shops, Inc.*, 754 So.2d 755, 757 (Fla. 3d DCA 2000),  Florida is the forum where Plaintiffs have now sought to pursue this cause of action.  The validity of and enforceability of the forum selection clause in the Partnership Agreement must then be determined by application of Florida law, *not* Israeli law.  *See id.*

In Florida, forum selection clauses will be enforced where there exists a close relationship between the signatory and the non-signatory, and the interests of the non-signatory are derivative of the interests of the signatory. *See Deloitte & Touche v. Gencor Industries, Inc.*, 929 So. 2d 678, 683 (Fla. 5th DCA), *rev. denied,*  944 So. 2d 987 (Fla. 2006).  *See also Venus Concept USA, Inc. v. Angelic Body, LLC*, 362 So. 3d 258, 264 (Fla. 2d DCA 2023) (forum selection clause enforced against a non-signatory and noted that "We are, as were our sister courts, guided by the factors

outlined *in Deloitte & Touche*.").    Plainly, that close relationship exists here as Defendant Avi Yosef signed the Partnership Agreement as a member of Yosef 2019, LLC.  Under Florida law, the Court finds that the forum selection clause of the Partnership is valid, enforceable, and controlling here.

## II. Forum Non Conveniens

Defendants alternatively move for dismissal based upon forum non conveniens.  Forum non conveniens "is an equitable judicially crafted rule designed to allow a court to dismiss, in certain limited circumstances, a lawsuit with little connection to Florida that would be better suited and fairly litigated elsewhere."  *Cortez v. Palace Resorts, Inc.*, 123 So. 3d 1085, 1090 (Fla. 2013)(citing *Kinney System, Inc. v. Continental Insurance Company*, 674 So. 2d 86 (Fla. 1996)). To prevail on a claim for dismissal based upon forum non conveniens, the moving party  must establish the following: (1) whether an adequate alternate forum exists which possesses jurisdiction over the whole case, including all of the parties; (2) all relevant factors of private interest favor the alternate forum, weighing in the balance a strong presumption against disturbing plaintiffs' initial forum choice; (3) if the balance of private interest is at or near equipoise, the court must further find that factors of public interest tip the balance in favor of trial in the alternate forum; and (4) the court must finally ensure that plaintiffs can reinstate their suit in the alternate forum without undue inconvenience or prejudice. *See id.* at 1091 (citations and quotation omitted); Florida Rule of Civil Procedure 1.061(a).  The moving party carries the burden of proof for each element of the forum non conveniens analysis.  *Publicidad Vepaco, C.A. v. Mezerhane*, 176 So. 3d 273, 277 (Fla. 3d DCA 2015), *rev. denied*, 2016 WL 1317676 (Fla. 2016).

Initially, this Court finds that given the applicability and enforceability of the forum selection clause, the most convenient forum for this lawsuit is Tel Aviv District Court, the forum

4

selected by the parties. *Club Med Brasil, S.A. v. Sicurella*, 921 So. 2d 49, 50 (Fla. 3d DCA 2006) (because forum selection clause required that the cause of action must be brought in Miami and in no other court, and plaintiff could not sue defendant in Brazil, as "there can be no more convenient forum than Miami.").

.       Notwithstanding that the Tel Aviv District Court is the determinative forum, as selected by the parties, application of the *Kinney* factors alternatively reveals that Baltimore County, Maryland is a much better suited forum than Volusia County, Florida.

Applying the first *Kinney* factor, the court must ascertain whether there is another adequate forum available to hear the case considering availability and adequacy. An "available" forum is one that can assert jurisdiction over the litigation, including all parties. *Cortez,* 123 So. 3d at 1091-1092. The ability to perfect service in the alternative forum is the key to availability. *Id.* at 1092 (quoting *Kinney*, 674 So. 2d at 90). Baltimore County, Maryland is an available forum that can assert jurisdiction over this litigation as Plaintiffs have previously brought the same action in Baltimore against Defendants Chananel and Avi Yosef. Further, there is no basis for this Court to conclude that there would be any inability to perfect service on Defendants in this forum.

Next, the court must weigh the balance of private conveniences, which focuses on four concerns: (1) access to evidence, (2) access to witnesses, (3) enforcement of judgments; and (4) the practicalities and expenses associated with the lawsuit. *Id.* at 1092. The Florida Supreme Court has instructed:

> Key to this second prong of the forum non conveniens inquiry, as we made clear in Kinney, is that 'the reviewing court always should remember that a strong presumption favors the plaintiff's choice of forum.' This presumption 'can be defeated *only* if the relative disadvantages to the defendant's private interests are of sufficient weight to overcome the presumption.' . . . This presumption afforded to the plaintiff's forum choice is a critical part of the analysis in light of the fact that the whole premise behind the forum non conveniens doctrine is that the plaintiff's choice of forum, even if inconvenient to the plaintiff, is *sufficiently inconvenient*

*for the defendant.* In other words, the assumption is that there is in fact a more convenient forum to litigate the dispute, but that the plaintiff selected the chosen forum to gain a strategic advantage.

*Id.* at 1092-1093 (citations omitted)(emphasis in original).

The fact that "all of the matters relating to the cause of action" occurred in the foreign state weighs heavily in favor of a dismissal for forum non conveniens. *Luptak v. Kutchins,* 768 So. 2d 1196, 1196-97 (Fla. 4th DCA 2000). Here, the evidence was not disputed that the real estate transactions underlying this cause of action all concern the sale and purchase of eighteen properties in Baltimore, Maryland. The affidavits with supporting documentation submitted by Defendants Avi Yosef and Chananel Yosef, and the testimony of Brian Spern, demonstrate that the title companies involved in the transactions as well as the anticipated witnesses of those transactions are in Maryland. The convenience of witnesses falls heavily against venue in Florida. *Wynn Drywall, Inc. v. Aequicap Program Admins., Inc.,* 953 So. 2d 28, 30 (Fla. 4th DCA 2007) (consideration of the convenience of witnesses is the most important of this *Kinney* factor). Further, this Court lacks at least some evidence that the Baltimore transactions and the monies therefrom have any nexus to Volusia County and the Supplemental Amended Complaint concedes that Plaintiffs "do not know exactly where Defendants have sent the property sale and rent proceeds." *See* Dckt. No. 4 at 11.

Finally, and notably, the presumption afforded to the Plaintiff's choice of forum under *Kinney* has been interpreted to apply if the plaintiff is from Florida and chose to sue in Florida. *See Ciba-Geigy Ltd. v. Fish Peddler, Inc.,* 691 So.2d 1111, 1118 (Fla. 4th DCA) (following the federal standard that "no special weight should have been given to a foreign plaintiff's choice of forum") (citation omitted), *rev. denied,* 699 So.2d 1372 (Fla. 1997). *See also Wood v. Bluestone,* 9 So. 3d 671, 674 (Fla. 4th DCA 2009) ("As appellee is a foreign plaintiff, his choice of forum is

not entitled to any special weight."); *Scotts Co. v. Hacienda Loma Linda,* 942 So. 2d 900, 902 (Fla. 3d DCA 2006) ("we do not afford the plaintiffs choice of forum any special weight because the plaintiff is a foreign corporation"), *rev. denied*, 953 So.2d 519 (Fla. 2007); *Mursia Invs. Corp. v. Industria Cartonera Dominicana,* 847 So. 2d 1064, 1067 (Fla. 3d DCA 2003) (the "presumption favoring the plaintiffs' choice of forum does not apply to foreign plaintiffs").  Plaintiffs are not from Florida which further erodes the deference afforded to their choice of forum.

Third, the public interest factors also support Defendants' position.  *See Cortez*, 123 So. 3d at 1093.   The public interest analysis focuses on whether the case has a general nexus with a plaintiff's chosen forum sufficient to justify the forum's commitment of judicial time and resources to it.  *Cortez*, 123 So. 3d at 1093.  Only the state of Maryland has a real public interest in providing a forum for the matters at hand to be litigated because all the business transactions at issue in this case took place in Maryland.   Moreover, this is Plaintiffs' third lawsuit.  The allegations stem from a Partnership Agreement that includes a forum selection clause, which required the suit be brought in Tel Aviv and Israeli law be applied.   Despite this, Plaintiffs have come to this jurisdiction for a Florida court to untangle and apply foreign law in a lawsuit which has a tenuous nexus to this forum.  That very thin nexus does not warrant the commitment of judicial time and resources of Volusia County, Florida.   *See Kinney,* 674 So. 2d at 90 ("[t]here is an appropriateness…in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict in laws, and in law foreign to itself.")(citation omitted).

Accordingly, based upon the foregoing, having carefully considered the totality of facts when applied to the first three *Kinney* factors, Defendants have overwhelmingly met their burden and demonstrated that Volusia County, Florida is an inconvenient forum to litigate this matter.

With that, as to the fourth factor, the court notes that Plaintiffs have previously filed their lawsuit in Tel Aviv, Israel, and Baltimore County, Maryland.  A forum is normally deemed an adequate alternative forum "if a defendant is amenable to process" there, such as if the defendant "stipulates that it is amenable to process." *Hilton Int'l Co. v. Carrillo,* 971 So. 2d 1001, 1005 (Fla. 3d DCA 2008).

Defendants contend that they "will not contest personal jurisdiction or venue in Baltimore" but a careful reading of their affidavits shows that their amenability to service of process was alternative to personal jurisdiction in Tel Aviv District Court in Israel.  *See*  Dckt. Nos. 53 and 54. This conditional stipulation is hereby rejected.  The Court orders that by virtue of their motion, Defendants Avi and Chananel Yosef stipulate acceptance of service of process, in either forum if filed within 120 days.  This non-conditional stipulation now ensures that Plaintiffs can reinstate their suit in either of the alternate forums without undue inconvenience or prejudice.

WHEREFORE, it is ORDERED AND ADJUDGED as follows:

a.  Defendants' Motion to Dismiss is hereby **GRANTED**.

b.  This Court retains jurisdiction for purposes of enforcement of this Order, which includes the conditions and stipulations contained herein.

c.  Defendants' Motion to Stay Pending Outcome of Prior Filed Action is **DENIED** as moot.

**DONE AND ORDERED** in Chambers at Daytona Beach, Volusia County, Florida this 26 day of January, 2024.

1/26/2024 3:13 PM 2023 31675 CICI

e-Signed 1/26/2024 3:13 PM 2023 31675 CICI
**MARY G. JOLLEY**

8

**CIRCUIT JUDGE**

**Copies furnished via eService:**

Joel D. Kenwood, Esq

S. Grier Wells, Esq

## Exhibit B - List of Properties

### Joint Asset LLC 1 Properties:

**1. 4312 Rokeby Rd, Baltimore**
Purchase Price: $81,000
with closing costs: $98,443
According to business plan: $92,500

Date: March 9, 2020
Sale Price: $265,000
Date: September 23, 2020

**2. 1809 Caroline St, Baltimore**
Purchase Price: $100,700
With closing costs: $109,010
Date: August 6, 2020
Sale Price: $250,000
Date: July 14, 2021

**3. 207 E. Heath St. Baltimore**
Purchase Price: $63,700
With closing costs: $96,196
According to business plan: $89,000
Date: July 23, 2020
Sale Price: $305,000
Date: May 18, 2021

**4. 1607 Race St, Baltimore**
Purchase Price: $75,000
With closing costs: $97,259
According to business plan: $115,000
Date: October 30, 2020
Sale Price: $80,000
Date: March 15, 2022

**5. 3604 W. Rogers Ave, Baltimore**
Purchase Price: $20,000
With closing costs: $27,896
Date: June 26, 2020
Sale Price: $150,000
Date: March 18, 2022

**6. 4002 Glen Avenue, Baltimore**
Purchase Price: $120,000
With closing costs: $126,852
Date: August 14, 2020
Sale Price: $350,000
Date: March 11, 2022


**Joint Asset LLC 2 Properties:**

**7. 114 Kinship Road, Baltimore County**
Purchase Price: $110,000
With closing costs: $124,568
Date: September 24, 2020
Sale Price: $337,000
Date: October 18, 2021

**8. 4502 Penhurst Avenue, Baltimore**
Purchase Price: $122,000
With closing costs: $136,000
Date: December 4, 2020
Sale Price: $350,000
Date: December 30, 2021


**Joint Asset LLC 3 Properties:**

**9. 2731 Uhler Avenue, Baltimore**

**10. 111 Collins Ave, Baltimore**
Purchase Price (2 properties collectively): $120,000
Date: January 11, 2021
Sale Price (2731 Uhler Ave): $97,000
Date: December 22, 2021
Sale Price (111 Collins Ave): $110,000
Date:  February 17, 2022

**11. 4029 W. Cold Spring Lane, Baltimore***
See #12 below

**12. 4411 Kavon Avenue, Baltimore***
Purchase Price (for 4029 W. Cold Spring and 4411 Kavon Ave. collectively): $207,000
Date: September 2020
Sale Price (4029 West Cold Spring Lane): $95,000
Date: March 17, 2022
Sale Price (4411 Kavon Avenue): $100,000

Date: February 14, 2022

**13. 2822 Kentucky Avenue, Baltimore***
See #15 below

**14. 2725 Uhler Avenue, Baltimore***
See #15 below

**15. 3906 Chesterfield Avenuye, Baltimore***
Purchase Price (for 2822 Kentucky, 2725 Uhler and 3906 Chesterfield, collectively): $256,500
Date: July 10, 2020
Sale Price: $105,000
Date: January 14, 2022
Sale Price: $105,000
Date: February 17, 2022
Sale Price: Not clear
Date: December 10, 2021

* These properties were owned by affiliates of Yosef 2019 LLC. The purchase price was taken by Yosef Brothers and/or Yosef 2019 LLC but no transfers of title occurred. Their properties should have been titled by Joint Asset LLC 3

**Joint Asset LLC 4 Properties:**

**16. 40 East Heath St, Baltimore**
Purchase Price: $150,000
With closing costs: $154,287
Date: April 19, 2021
Sale Price: $120,000
Date: March 15, 2022

**17. 137 Collins Avenue, Baltimore**
Purchase Price: $58,000
With closing costs: $61,688
Date: March 4, 2021
Sale Price: $170,000
Date: February 2, 2022

**18. 1403 Race Street, Baltimore**
Purchase Price: $155,000
With closing costs: $160,641
Date: March 8, 2021
Sale Price: $250,000
Date: March 15, 2022