# EXHIBIT A

## הסכם שותפות

בין : Yosef 2019 llc (להלן: "צד א'")

לבין:   זמן נדלן בולטימור ( שותפות בהקמה) ( להלן:" צד ב'" ) .

לבין: Baltimore flips Israel 2020 llc  (להלן: צד ג')


Avi Yosef
Yosef 2019 LLC
02/24/20

Baltimore flips
Israel 2020 llc

17

1. וצד א׳ עוסק בעיר בולטימור ברכישת בתי מגורים שיפוצם ומכירתם לשם רווח
2. וצד א׳ הציע לצד ג׳ (להלן :״משקיעים״) על מנת שצד א׳ וחברה שיאגדו המשקיעים ישקיעו במשותף במיזם לרכישת בתים שיפוצם ומכירתם לשם חלוקה ברווח.
3. וצד ג׳ הסכים לגייס משקיעים לצד ב׳ תוך שצד ב׳ ייכנס לשותפות עם צד א׳ בתנאים כפי שיפורטו להלן
4. וצד ג׳ גייס משקיעים ואלו יתאגדו  תחת LLC אותו צד ג׳ רשום כמנהל  (כשותף כללי)

## לפיכך הוצהר, הותנה והוסכם בין הצדדים כדלקמן:

### 1. מבוא, כותרות, פרשנות והגדרות

1.1. המבוא להסכם זה והנספחים לו מהווים חלק בלתי נפרד הימנו.

1.2. כותרות הסעיפים בהסכם זה באות לשם נוחיות ההתמצאות בלבד. אין הן מהוות חלק מהחסכם ואין להסתמך עליהן לפירושו או לביאורו.

1.3. בהסכם זה כל האמור בלשון יחיד אף ברבים כמשמע וכן להיפך וכל האמור במין זכר אף מין נקבה במשמע וכן להיפך. הוראות סעיף זה לא יחולו אם יש בגוף העניין או בהקשרו דבר שאינו מתיישב עם הוראות הפרשנות דלעיל.

### 2. כינון השותפות וסמכויותיה

#### 2.1. כינון השותפות

הצדדים מסכימים לכונן שותפות רשומה שתרשם במדינת מרילנד ארה״ב

2.2. הושתפים בשותפות יהיו צד ב׳ 85% חלקים בשותפות וצד א׳ 15% בשותפות. יחד עם זאת, ברווחי השותפות יחלקו הצדדיםכמפורט בסעי 7 להלן. וקבלת החלטות בחברה תהיה בהתאם לאמור בסעיף 3.

#### 2.3 פעילות השותפות

מטרת הפעילות הינה להשיא רווח לשותפות באמצעות הפעילות לשמה קמה השותפת. השותפות תעסוק ברכישת בתים צמודי קרקע בעיר בולטימור ארה״ב, תדאג לשפץ אותם ולהעמידם בשוק החופשי למכירה.

עם הקמת השותפות השותפים יזרימו ראשית לשותפות סך של 1 מליון דולר, כל שותף יזרים כפי חלקו היחסי בשותפות.

באמצעות ההון שהוזרם השותפות תרכוש בתים צמודי קרקע בשוק החופשי, כינוסים וכל דרך חוקית ומקובלת לרכישת נכסים. ההון לצורך רכישת הבתים ימומן באמצעות הון השותפות

עבודות השיפוץ יבוצעו באמצעות כח אדם של צד א׳ בעלות השותפות. עלויות השיפוץ כגון רכישת חומרים, עלויות רישוי וכו׳ ישולמו על ידי השותפות. צד א׳ לא יוכל להפיק כל רווח אישי מביצוע השיפוצים. כל הוצאה תשולם כנגד אסמכתא , לרבות שכר עבודה..

### 3. ניהול השותפות

*Avi Yosef*
Yosef 2019 LLC
02/24/20

Baltimore flips
Israel 2020 llc

18

החלטות בשותפות תתקבלנה פה אחד.

צד א' אחראי על תפעול השותפות, איתור הנכסים , משלוח דו"ח עיסקאות ניהול בפועל של ניהול ורכיישת הבתים, שיפוצם, והעמדתם למכירה יבוצע על ידי צד א'. צד א' מתחייב לפועל בתום לב ושיקול דעת להצלחת השותפות בלי ניגוד עניינים. כל חוזי המכר ינוהלו על שם השותפות וחברת הטייטל תעביר במכירות הבתים כספים לחשבון השותפות בלבד.

בכל עיסקה עתידית של גיוס הון צד-א יזרים 15% מההון וצד ב' 85% מההון. לפני כל רכיישה צד א' יעביר לצד ב' הודעת וואצאפ/מייל לפיה בכוונתו לרכוש נכס, לרבות פרטי הנכס והמחיר המקסימאלי בו הוא מתכוון לרכוש את הנכס , דו"ח הוצאות מחיר מכירה צפוי. צד ב' יכול לאשר את הרכישה או להתנגד לה, וזאת תוך 24 שעות מעת קבלת ההודעה. במידה וצד ב' לא יגיב תוך 24 שעות, לרבות במקרה בו צד ב' לא יקרא את ההודעה, הרי שצד א' יוכל לרכוש את הנכס.

ככל והצדדים יקבלו החלטה משותפת על השגת מימון לשותפות, יהא צד א' אחראי על השגת המימון וזאת ללא כל התחייבות כי הוא יצליח להשיג את המימון בפועל.

שותף לא יהא אחראי לחיוביה של השותפות למעלה מהסכומים שאותם השקיע בהון השותפות. שותף לא יהא חייב ולא יידרש לבצע השקעה נוספת בהון השותפות מעבר לסך סכום ההתחייבויות הכולל שלו, אך למען הסר ספק, אין באמור כדי לפטור שותף מביצוע כל תשלום אחר אשר אותו הוא מחוייב לבצע על פי תנאי הסכם זה.

5. **הוצאות**

השותפות תשא במלוא ההוצאות מהפעילות. אף לא אחד מהשותפים יהיה זכאי לשכר בגין פעילותו עבור השותפות.

כל שותף יפקיד את חלקו בהון העצמי באמצעות הפקדה לחשבון בנק על שם השותפות שינוהל על ידי השותפות בארה"ב. זכויות החתימה בחשבון הבנק יקבע לחתימה משותפת של כל אחד מהשותפים, קרי חתימת כל השותפים בצירוף חותמת החברה. ברשם השותפויות במדינת מרילנד ירשמו השותפים כמנהלים יחדיו.

כל הכנסות השותפות יופקדו אך ורק בחשבון השותפות וכל ההוצאות ישולמו מהחשבון כנ"ל. כל אסמכתא חוקית בכתב על תשלום תחשב כהוצאה לעניין הסכם זה.

6. **תקופת ההשקעה**

תקופת ההשקעה של השותפות תחל ביום _____ (להלן: **"יום הסגירה הראשונה"**) ותימשך עד 36 חודש שאז יימכרו כל הסתים בבעלות השותפות/**"תקופת ההשקעה"**.

מובהר בזאת כי צד א' הציג מצג של רווח שנתי שיעמוד על 20% תשואה על ההון. במידה ויתברר כי הרווחים נמוכים מהמצג נשמרת לצד ב' האופציה להדיע על מכירת הנכסים , השבת הקרן וחלוקת הרווחים בהתאם לתנאי הסכם זה. וזאת בכפוף לכך שחלפו ארבעה חודשים מיום העברת כלל סכום ההשקעה לחשבון השותפות, וכן שלא היו נסיבות שאינן תלויות בצד א' שמנעו את שיפוץ המבנים, כגון כח עליון, שביתה וכדומה.

Avi Yosef
Yosef 2019 LLC
02/24/20

Baltimore flips
Israel 2020 llc
02/24/20

7. **חלוקות**

מובהר בזאת כי רווחים ממכירת כל נכס יחולו לאחר מכירתו, בצורה כזו שהחון יישאר ורק הרווחים יחולקו. הרווחים יחולקו באופן הבא: צד א'- 50%, צד ב'- 25% וצד ג' 25% מהרווחים, קרי על אף שצד א' מחזיק רק ב15% מהשותפות הוא זכאי ל 50% מהרווחים

19

ואילו צד ג' למרות שלא מחזיק בהון בפרויקט זכאי ל 25% מהרווחים. עם סיום תקופת ההשקעה תוחזר קרן ההשקעה לכל שותף לפי חלקו היחסי ( קרי 85% לצד ב' ו 15% לצד א').

מובהר בזאת כי צד ב' מקבל העדפה בחלוקת הרווחים כך שראשית תוטב לו תשואה שנתית של 10% על ההון שהזרים, לאחר מכן לצד ג' מגיעה תשואה של 7.5% עם ההון שצד ב' הזרים ורק לאחר מכן יקבל צד א' חלקו. יודגש 17.5% אותם יקבלו צד ב' ו-ג' הינם חלק מרווחיהם בשותפות (כל צד זכאי ל 25% מהרווחים), והעדיפות שלהם הינה רק בכך שהם יקבלו את ח – 17.5% קודם לצד א'. בכל מקרה שסך הרווחים נמוך מ 17.5 % אזי צד א' אינו זכאי לחלוקה.

### 8. תקופת השותפות ופירוקה

השותפות תתחיל את פעילותה ועסקיה במועד הקמתה ותמשיך להתקיים אלא אם תפורק לפני כן בהסכמת השותפים. עם סיום הפעילות תחולק התמורה והשותפות תחוסל.

### 9. העברות

מי מהשותפים אינם זכאים למכור, להמחות, להעביר, לשעבד, למשכן או לבצע כל פעולה אחרת בזכויותיהם בשותפות , אלא אם כן ניתנה לכך הסכמתם של השותף השני

### 10. ניגודי עניינים

מוצהר ומוסכם בזה שהשותפים  רשאים לעסוק בעיסוקים אחרים אך אינם רשאים לעסוק בפעילות שיש בה כדי להתחרות בשותפות ו/או לפגוע בפעילותיה ו/או רווחיה. יודגש, צד א' ימשיך לעסוק ברכישה של מבנים ושיפוצם בבולטימור, וזאת גם שלא במסגרת השותפות, ואין באמור בהסכם זה כדי למנוע ממנו את האפשרות הזו.

יודגש, כי צד ב' ימשיך לעסוק בהשקעה ו/או יזמות ו/או מימון פרוקייטים בנדל"ן בארה"יב (ויתכן שאף בבולטימור עצמה), ישראל וכל מקום אשר יחפוץ ברחבי העולם.

### 11. דוחות כספיים

השותפות תחזיק ותנהל ספרי חשבונות שיאפשרו עריכת דו"חות כספיים מבוקרים , שישקפו באופן נאות את עסקי השותפות . הוצאות ניהול הדוחות הכספיים, כמו גם יתר ההוצאות הקשורות לניהול השותפות תהיינה על השותפות. יחד עם זאת, סכום זה לא יהיה חלק ההוצאות לצורך חישוב התחייבות צד א' כאמור בסעיף 6 לעיל, וחישוב החלוקה ורווחי הצדדים כאמור בסעיף 7 לעיל.

*Avi Yosef*
**Yosef 2019 LLC**
02/24/20

Baltimore flips
Israel 2020 llc
02/24/2020

3. **12. הדין החל**

על הסכם זה יחולו חוקי מדינת ישראל, והוא יפורש בהתאם להם. סמכות השיפוט הייחודית והבלעדית בכל הקשור להסכם זה תהיה אך ורק לבית המשפט המחוזי בתל-אביב, ולא תהיה סמכות לבית משפט אחר.

ולראיה באו הצדדים על החתום, היום

*Baltimore flips*
*yosef 2020 llc*
02/24/20

Avi Yosef
**Yosef 2019** LLC
02/24/20
yosef 2019 llc

זמן לנדל"ן

1.

21

Translated from English

# Partnership Agreement

**By and Between:**

    Yosef 2019 LLC (hereinafter: "**Party A**")

**-AND-**

    Baltimore Real Estate Time (Partnership in Establishment) (hereinafter: "**Party B**")

**-AND-**

    Baltimore Flips Israel 2020 LLC (hereinafter: "**Party C**")

[*Signed*]　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　[*Signed*]

Translated from English

1. Party A engages in the acquisition of residential properties, their renovation, and selling them for a profit, in the city of Baltimore;

2. Party A has offered Party C (hereinafter: "**Investors**") so that Party A and a Company that the Investors will incorporate will invest in a joint venture to purchase homes, renovate them, and sell them to divide the profits;

3. And Party C agreed to find Investors for Party B, while Party B enters into partnership with Party A, under such terms and conditions as are listed hereinafter;

4. And Party C found Investors, and they shall incorporate under the auspices of an LLC, in which Party C shall be registered as the manager (the general partner).

### Therefore, the Parties have Declared, Stipulated, and Agreed to the Following:

1. **Preamble, Clause Headings, Interpretation, Definitions**

    1.1. The Preamble and Appendices hereto constitute integral parts hereof.

    1.2. Clause headings in this Agreement have been inserted exclusively for convenience of orientation. They do not constitute part of the Agreement, and will not be relied on in interpreting or explaining it.

    1.3. In this Agreement, everything stated in the singular form, also impliedly means the plural, and vice versa; and everything stated in the masculine form, also impliedly means the feminine, and vice versa. The provisions of this Clause shall not apply if the substance or context of the matter contains anything inconsistent with the aforementioned interpretation provision.

2. **The Partnership's Establishment and Powers**

    2.1. **Establishment of the Partnership**

    The Parties agree to establish a registered partnership to be registered in the State of Maryland, in the US.

    2.2. The Partners in the Partnership will be Party B who shall own 85% shares of the Partnership, and Party A – 15% of the Partnership. However, the Partnership's profits will be distributed in accordance with Clause 7 hereinafter. Moreover, adopting Company resolutions will be done in accordance with Clause 3.

    2.3. **The Partnership's Activity**

    The Partnership's aim is to maximize profits by means of the activity for which the Partnership has been founded. The Partnership will focus on the acquisition of single-family homes in the city of Baltimore, in the US, renovating them, and putting them up for sale on the open market.

    With the establishment of the Partnership, the Partners will initially inject into the Partnership a total of 1 million USD; each Partner will inject funds in accordance with his proportionate share in the Partnership.

[*Signed*]                                                                                                              [*Signed*]

Translated from English

By means of the injected capital, the Partnership will acquire single-family homes on the open market, by agency of receiverships, or by any other legal and acceptable means to purchase properties. The capital to purchase the properties will be financed from the Partnership's equity.

The renovation works will be performed by Party A's manpower, at the Partnership's expense. The renovation costs, such as purchasing materials, licensing costs, etc. will be paid by the Partnership. Party A cannot make any personal profit from carrying out the renovations. Every expense will be paid in exchange for documented proof, including the salaries.

3. **Managing the Partnership**

Decisions in the Partnership shall be taken unanimously.

Party A is responsible for the operation of the Partnership, locating assets, sending transaction reports, management, in practice, of the management and acquisition of the homes, their renovation, and putting them up for sale; all these will be performed by Party A. Party A undertakes to act in good faith and with good judgment for the success of the Partnership, with no conflicts of interest. All sale contracts will be managed in the Partnership's name, and the title company will transfer funds, upon the sale of the properties, exclusively into the Partnership's account.

In every future fundraising transaction, Party A will inject 15% of the capital, and Party B 85% of the capital. Before every purchase, Party A will send Party B a WhatsApp message / email, noting that he intends to purchase an asset, including the details of the property, and the maximum price he intends to pay for the property, as well as a forecast sale price expense report. Party B can approve the purchase or object to it within 24 hours of receiving said notice. In the event that Party B fails to respond within 24 hours, including in the event that Party B fails to read the message, Party A will be free to purchase the property.

If the Parties take a joint decision to secure financing for the Partnership, Party A shall be responsible for obtaining the funds, but with no commitment that he will succeed in actually securing the funding.

No Partner shall be liable for the Partnership's liabilities over and above the amounts he invested in the Partnership's equity. A Partner shall not be required to make any additional investments in the Partnership's capital, that exceeds the total amount of his undertaking, but for the avoidance of doubt, the foregoing does not exempt a Partner from paying any other payment which he is obliged to pay under the terms and conditions of this Agreement.

5. **Expenses** [*Translator's Note*: Numbering irregularity in original – g.m.]

The Partnership shall bear the entire costs related to the operations. None of the Partners will be entitled to a salary for his actions for the Partnership.

Each Partner will deposit his share of the equity by means of a deposit into a bank account in the Partnership's name, to be managed by the Partnership in the US. Bank account signature rights will determine that the joint signature of each one of the Partners will be necessary, namely, the signature of all Partners together with the company's seal. The Partners shall be registered with the Maryland Registrar of Partnerships as joint managers.

[*Signed*]                                                                                                      [*Signed*]

Translated from English

All the Partnership's revenue will be exclusively deposited into the Partnership's account, and all expenses will be paid from said account. Any lawful proof in writing regarding the payment of expenditure, shall be considered an expense for the purposes of this Agreement.

6. **The Investment Period**

   The Partnership's investment period will commence on _____ (the "**First Closing Day**") and will continue for 36 months, at which point all the homes owned by the Partnership will be sold (the "**Investment Period**").

   **It is hereby clarified, that Party A has presented a representation that annual profits shall stand at a 20% return on equity. If it transpires that the profits are lower than said representation, Party B reserves the right to give notice to sell the properties, reimburse the principal, and distribute the profits in accordance with the terms and conditions of this Agreement. This is subject to the passage of four months from the date on which the investment sum was transferred into the Partnership's account, and that there were no circumstances beyond Party A's control that prevented the renovation of the homes, such as *force majeure*, strikes, etc.**

7. <u>**Distributions**</u>

   It is hereby clarified, that profits from the sale of every asset will apply after its sale, in such a way that the capital will be retained, and only the profits will be distributed. The profits will be distributed in the following manner: Party A – 50%, Party B – 25%, and Party C – 25% of the profits, *i.e.*, even though Party A holds only 15% of the Partnership, he is entitled to 50% of the profits, and notwithstanding the fact that Party C does not own any equity in the project, he is entitled to 25% of the profits. Upon the conclusion of the Investment Period, the investment principal will be refunded to each Partner in accordance with his relative share (*i.e.* 85% to Party B, and 15% to Party A).

   It is hereby clarified, that Party B will have preference in the distribution of profits, so that first of all, an annual return of 10% on the equity he injected will be secured for him; thereafter, Party C is entitled to a return of 7.5% on the capital injected by Party B, and only thereafter will Party A receive his share. It is emphasised, the aforementioned 17.5% to be received by Parties B & C, constitute a portion of their profits in the Partnership (each party is entitled to 25% of the profits), and their right of preference is only with respect to receipt of said 17.5% prior to Party A. In the event that total earnings are less than 17.5%, Party A will not entitled to any distribution.

8. <u>**The Partnership's Term and Liquidation**</u>

   The Partnership will commence its activities and business on the date of its establishment, and will continue to exist unless it is liquidated beforehand by the Partners' consent. Upon completion of the activity, the consideration will be divided, and the Partnership will be liquidated.

9. <u>**Transfers**</u>

   No Partner is entitled to sell, assign, transfer, pledge, mortgage, or perform any other action with his rights in the Partnership, unless they secured the consent of the other Partner.

10. <u>**Conflicts of Interests**</u>

[*Signed*]                                                                                                                [*Signed*]

Translated from English

It is hereby declared and agreed, that the Partners may engage in other businesses, but are not permitted to engage in activities that compete with the Partnership and/or which may harm its operations and/or profits. It is emphasised, Party A will continue to engage in the purchase of houses and the renovation thereof in the city of Baltimore, even outside the setting of the Partnership, and nothing herein this Agreement shall prevent him from doing so.

It is emphasised, that Party B will continue to engage in investment and/or entrepreneurship and/or US real estate project financing (possibly even in Baltimore itself), in Israel, and in any place he wishes to around the world.

## 11. Financial Statements

The Partnership will keep account books that will facilitate the preparation of audited financial statements, which shall properly reflect the Partnership's businesses. The expenses incidental on management of the financial statements, as well as the other expenses related to the Partnership's management, will apply to the Partnership. However, this sum will not constitute part of the expenses for the purposes of calculating the undertakings incumbent on Party A under Clause 6 above, and the calculation of the distribution and the Parties' profits shall be as stated in Clause 7 above.

## 12. Applicable Law

This Agreement shall be subject to the laws of the State of Israel, and will be interpreted accordingly. Unique and exclusive jurisdiction with respect to any matter related to this Agreement will vest exclusively in the Tel Aviv District Court, and no other court shall have jurisdiction.

**And in witness whereof the parties have signed, this Day**

| [Signed] | [Signed] | [Signed] |
|---|---|---|
| **Real Estate Time** | **Yosef 2019 LLC** | **XXXXX** |

[Signed]                                                                                                                              [Signed]