**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

BALTIMORE FLIPS ISRAEL 2020 LLC, *et al.*,

    Plaintiffs,

v.

CHANANEL YOSEF, *et al.*,

    Defendants

Case No. 24-cv-1442-ABA

**MEMORANDUM OPINION**

This dispute arises from a series of agreements to purchase, renovate, and sell properties in Baltimore, Maryland. The dispute has spawned litigation in Israel and three courts in the United States. Defendants have moved to dismiss the complaint on issue preclusion, forum-selection, *forum non conveniens*, and failure-to-state-a-claim grounds. For the reasons set forth herein, the motion filed by Chananel Yosef and Avi Abraham Yosef (the "Yosef Brothers" or "Yosef Defendants") will be denied. The motion filed by Defendants Salazar Law, P.C. and Yosef Chaim Salazar (the "Salazar Defendants") will be granted.

## I.  BACKGROUND

At this stage, the Court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). Plaintiffs allege as follows.

### A.  The Parties

Plaintiffs are five Delaware limited liability companies: Baltimore Flips Israel 2020 LLC ("Baltimore 1"), Nofim LLC ("Nofim"), Baltimore Flips Israel 2 LLC ("Baltimore 2"), Baltimore Flips 2 Israel 2020 LLC ("Baltimore 3"), and Baltimore Flips

Management 2020 LLC ("Baltimore Management") (collectively, "Plaintiffs"). ECF No. 32 ("Am. Compl.") ¶¶ 1-2. The members of each are citizens and residents of Israel. *Id.* Baltimore Management is co-managed by Elior Carmeli ("Carmeli") and Tal Shalom Boiman ("Boiman"). *Id.* ¶ 2. Baltimore Management is the manager of Baltimore 1, Baltimore 2, and Baltimore 3. *Id.* ¶ 3. The manager of Nofim is Haim Uzan ("Uzan"), who assigned day-to-day management to Carmeli. *Id.* ¶ 4.

### B. Initial Conversations between Plaintiffs and the Yosef Defendants

The Yosef Defendants are citizens of Israel and currently domiciled in Florida. *Id.* ¶ 5. In 2019, they formed Yosef 2019, LLC, a Maryland limited liability company with its principal place of business in Maryland. *Id.* ¶ 7; ECF No. 36-1 at 3. Defendant Salazar Law, P.C. is a Maryland law firm with its principal place of business in Baltimore, and Defendant Yosef Chaim Salazar is an attorney licensed to practice law in Maryland. *Id.* ¶¶ 9-10. "At some time prior to November 2019," the Yosef Brothers came to what Plaintiffs call "an agreement to defraud would-be investors into a scheme to invest in real estate in the City of Baltimore, Maryland." *Id.* ¶ 18. The agreement purportedly was aimed at finding investors to "provide funds to the Yosef Brothers through a series of transactions involving the purchase, renovation and sale of depressed real estate" using business entities created by Yosef Chaim Salazar. *Id.* ¶ 19.

In November 2019, the Yosef Brothers met with Carmeli in Baltimore and presented themselves as "experts in the real estate market." *Id.* ¶ 20. Avi Yosef identified himself as "the property locator and the person responsible for carrying out the renovations to acquired properties, the day-to-day management of the business and lead negotiator for the Yosef Brothers." *Id.* Chananel Yosef identified himself as "the financier who would be responsible for banking issues, payments to employees and the

like." *Id.*

The Yosef Brothers, mostly via Avi Yosef, "represented [to Carmeli] that there were many properties in poor physical condition for sale in the Baltimore area that could be renovated and sold for a profit." *Id.* ¶ 21. The Yosef Brothers contemplated an agreement in which "[Plaintiffs] would raise investor funds to be sent to a newly-formed Maryland LLC and that the Yosef Brothers likewise would inject their own capital contributions to fund a series of real estate flipping projects from which all parties would benefit in accordance with agreed-upon percentages." *Id.* ¶ 22.

After the November 2019 meeting, the Yosef Brothers continued to pursue plaintiffs and their investors to join their real estate investment venture by representing that they had previously been successful in the real estate flipping business and that the deal would be structured such that the Yosef Brothers and plaintiffs' investors would all contribute capital to the venture. *Id.* ¶ 23. Plaintiffs allege that they and their investors placed considerable weight on the agreement that there would be "mutual contribution[s] of investment money." *Id.* Avi Yosef also represented that he would provide a business report for each property (the "Deal Reports") that would "accurately set forth anticipated costs, revenues, purchase price and sale price concerning the properties to plaintiffs," which plaintiffs could rely upon in deciding whether to invest funds. *Id.* ¶ 25.

As a result of these discussions, between approximately November 2019 to February 2020, Plaintiffs entered into a series of "partnership" agreements with Yosef 2019, LLC. *Id.* ¶ 28; ECF Nos. 36-2, 36-3, 36-4 (collectively, the "Partnership Agreements"). Two of the Agreements contain, in relevant part, a forum selection clause that states that "[u]nique and exclusive jurisdiction with respect to any matter related to

this Agreement will vest exclusively in the Tel Aviv District Court, and no other court shall have jurisdiction." ECF No. 36-2 at 11. One of the later Partnership Agreements (titled the "Agreement to Invest") contains a forum selection clause that states that "[t]he sole and exclusive jurisdiction with respect to any matter related to this Agreement shall vest exclusively in the District Court in Ramla, and no other court shall have jurisdiction." ECF No. 36-4. Ramla is a city in Israel, located between Tel Aviv and Jerusalem, but the parties agree there is no such court as the "District Court in Ramla."

### C. Baltimore I

Carmeli and Boiman created Baltimore 1 and solicited investors for its venture with the Yosef Brothers. *Id.* ¶ 29. In March 2020, Chananel Yosef created Zman Nadlan Baltimore LLC ("Joint Asset LLC 1") as the first company created to facilitate investments in the joint business venture between the Yosef Brothers and Baltimore 1. *Id.* Under the initial agreement between the Yosef Brothers and Baltimore 1, "Baltimore 1 was to provide 85% of the equity for the venture with the Yosef Brothers, through Yosef 2019 LLC, responsible for investment of the remaining 15%." *Id.* ¶ 30. The agreement provided for a 17.5 percent preference distribution to Baltimore 1 and Baltimore Management, and otherwise provided that the parties would split the "profits of real estate sales evenly." *Id.*

Beginning in March 2020, Baltimore 1 contributed $850,000 to Joint Asset LLC 1, while the Yosef Brothers contributed $150,000. *Id.* ¶ 33. Over the next eight months, Joint Asset LLC 1 purchased six properties to renovate and resell. *Id.* The first property (the "Rokeby Property") was purchased by Yosef 2019 LLC before Joint Asset LLC 1 was formed. *Id.* ¶ 35. On March 25, 2020, Baltimore I wire-transferred $83,677 to Yosef 2019 LLC and $85,000 to Joint Asset LLC 1 for renovations of the Rokeby Property. *Id.*

¶ 36. The Rokeby Property was sold for $265,000 on September 23, 2020. *Id.* ¶ 38. The Yosef Brothers represented the sale price and profits to Plaintiffs to be higher than they actually were, and they disbursed $46,135 to Plaintiffs. *Id.* Plaintiffs allege that, as a direct result of the sham reports and profit numbers provided by the Yosef Brothers in connection with the Rokeby Property, they invested additional funds—funds they allege they would not have invested had they known the true profits from the Rokeby Property sale. *Id.* ¶ 40.

Plaintiffs allege the Yosef Brothers "overstated the amount of profit to induce plaintiffs into thinking that the transaction was a profitable one so that plaintiffs would raise additional funds for future transactions." *Id.* ¶ 39. Plaintiffs also allege they discovered that "the Yosef Brothers extracted their own capital contribution from the initial first sale of [the Rokeby Property] while the entire capital contribution of Baltimore 1 was locked in the business of Joint Asset LLC 1." *Id.* ¶ 41. Plaintiffs also allege that Defendants used Baltimore 1 funds to pay expenses unrelated to the Rokeby Property, without informing Baltimore Management or Carmeli. *Id.* Each of the other five properties purchased by Joint Asset LLC 1 using Baltimore 1's contributions were allegedly the product of similar conduct on behalf of the Defendants. *Id.* ¶ 42.

All Joint Asset LLC 1 properties were eventually sold, and other than the initial distribution of $46,135 from the sale of the Rokeby Property and one other distribution of $22,690 from the sale of one of the other five properties, Joint Asset LLC 1 distributed no other funds to Baltimore 1. *Id.* ¶ 44.

### D. Nofim

Similarly, as a result of the initial discussions between the parties, beginning in September 2020, Nofim contributed a total of $430,000 to H&RCA Group LLC ("Joint

Asset LLC 2") and the Yosef Brothers "ostensibly" contributed approximately $76,000. *Id.* ¶ 45. For the next three months, Joint Asset LLC 2 purchased two properties to renovate and resell. *Id.* ¶ 46. The Yosef Brothers continued to provide Deal Reports in advance of each of the purchases. *Id.*

Joint Asset LLC 2 sold the two properties acquired for approximately $687,000 but did not disburse any of the profits to Nofim. *Id.* ¶¶ 49-50. As with Baltimore I, Plaintiffs allege that the Deal Reports contained false information to convince Plaintiffs to invest in these ventures, the Yosef Brothers concealed the profits yielded from the sale of the properties, and the Yosef Brothers took their own capital contribution from the sale of the Joint Asset LLC 2 properties. *Id.* ¶¶ 47-48, 50. Neither Baltimore Management nor Carmeli were informed of the Yosef Brothers' withdrawals. *Id.* ¶ 50. After the dispute arose, Baltimore Management was able to get a partial repayment in the amount of $200,000, but no other distributions were made. *Id.*

### E. Baltimore 2

Similarly, beginning in September 2020, Baltimore 2 contributed $500,000 to Baltimore Rentals 2020 LLC ("Joint Asset LLC 3") and the Yosef Brothers contributed about $88,000 over a period of three months. *Id.* ¶ 51. During those three months, Joint Asset LLC 3 purported to buy seven properties for "rental, hold and finance purposes." *Id.* Plaintiffs were similarly provided with "Deal Reports" in advance of each of the property purchases. *Id.*

In 2022, Plaintiffs learned that five out of the seven properties "were never actually purchased by Joint Asset LLC 3, although the purchase price for such properties was paid by interstate wire to the escrow agent." *Id.* ¶ 52. Plaintiffs also learned that "the owners of these five properties were actually colleagues and family members of the

Yosef Brothers, or other companies they personally owned, including an entity known as Elimor Properties, whose sole member is Avi Yosef." *Id.* ¶ 53. The Yosef Brothers allegedly never informed Plaintiffs that the properties were indirectly owned by the Yosef Brothers, that those properties were never purchased, or that the funds were removed from escrow without Baltimore Management's or Carmeli's approval. *Id.*

Joint Asset LLC 3 sold the two properties it did purchase, and the other five properties have also been sold to third parties (allegedly associates of the Yosef Brothers), for a total of over $700,000. *Id.* ¶ 54. Following the sale of the Joint Asset LLC 3 properties, the Yosef Brothers allegedly distributed to themselves the funds they had originally contributed, but Baltimore 2 never was refunded its capital contribution or a share of the profits from the sales. *Id.* ¶ 55.

### F. Baltimore 3

Lastly, beginning in March 2021, Baltimore 3 contributed $850,000 to Zman Nadlan 2 LLC ("Joint Asset LLC 4") and the Yosef Brothers contributed about $30,000 over a period of three months. *Id.* ¶ 56. During those three months, Joint Asset LLC 4 bought three properties for "renovation and resale purposes." *Id.* Plaintiffs were similarly provided with "Deal Reports" in advance of each of the property purchases, and Baltimore 3 made its contributions by wiring money to Joint Asset LLC 4 or to its escrow agent. *Id.*

Plaintiffs later learned that the "Yosef Brothers failed to make the full amount of capital contribution" they were contractually required to make (15% of the total amount, i.e., $150,000), and failed to disclose this information to Baltimore Management or Carmeli. *Id.* ¶ 57. Without Baltimore Management's or Carmeli's consent, Joint Asset LLC 4 sold all three properties to third parties (parties that allegedly were associates of

the Yosef Brothers). *Id.* ¶ 58. The Yosef Brothers reimbursed themselves their own capital contributions from the proceeds of the sale of the Joint Asset LLC 4 properties; Baltimore 3 alleges it never received back its capital contribution or a share of the profits from the sales. *Id.* ¶ 59.

### G. Salazar Defendants

Plaintiffs allege that the above transactions and sales were facilitated by the Salazar Defendants. *Id.* ¶ 60. The Salazar Defendants represented each of the Joint Asset LLCs as counsel. *Id.* ¶ 61. Plaintiffs allege that the Salazar Defendants were responsible for "forming and registering" the various joint asset entities, drawing up the deeds for the various properties, controlling trust accounts to hold funds, serving as title agent for the property purchases, and earning fees as a result, while being aware of Plaintiffs' involvement in these joint ventures. *Id.* ¶¶ 61-66.

Plaintiffs allege that the Salazar Defendants, in some of the property transactions, "participated in deeding the properties to co-conspirator Yosef 2019 LLC, rather than to a Joint Asset LLC, as had been represented to plaintiffs" by the Yosef Brothers. *Id.* ¶ 67. Plaintiffs also allege that the Salazar Defendants diverted funds from the trust account holding the funds from the sales to accounts owned by the Yosef Brothers rather than to the Joint Asset LLCs, which Plaintiffs alleged breached duties that the Salazar Defendants owed to them. *Id.* 68-70. Lastly, Plaintiffs allege that the Salazar Defendants "actively and intentionally concealed HUD-1 forms, deeds and related documents from the underlying transactions." *Id.* ¶ 71.

## II.    PROCEDURAL HISTORY

The parties have spent the past nearly three years jockeying for whether their disputes should be litigated in the Tel Aviv District Court in Israel, in the Circuit Court

for Baltimore County, Maryland, in the Seventh Judicial Circuit Court of Florida, or in this court. The Court briefly summarizes the procedural history here; additional details are addressed as relevant below.

Plaintiffs (along with the individual principals Elior Carmeli and Tal Boiman) originally filed suit against the Yosef Defendants and Yosef 2019 LLC in Israel (the "First Israel Action"), on March 29, 2022. ECF No. 43 at 9. The Yosef Defendants and Yosef 2019 LLC contested jurisdiction in Israel. *Id.* at 10-11. Plaintiffs voluntarily dismissed the First Israel Action.

The next month, around April 5, 2022, Plaintiffs and others filed a separate lawsuit in Baltimore County, Maryland (the "Baltimore County Action"). ECF No. 43-4 at 5 (docket sheet). But Plaintiffs apparently did not serve process in the Baltimore County Action, and accordingly in October 2022 that action was dismissed because service had not been effectuated. *Id.* at 6 (docket entries 4, 5, & 6: "Dismissed w/o prejudice as to certain parties pursuant to Md. Rule 2-507(b)").

Meanwhile, Plaintiffs had filed a third case, in the Seventh Judicial Circuit Court of Florida (the "Florida Action"). Plaintiffs filed an amended complaint in the Florida Action on May 3, 2023. *Id.* ¶ 13; ECF No. 24-5. The amended complaint alleged "five counts of conversion, five counts of constructive fraud, and five counts of breach of duty of loyalty." ECF No. 32 at 34. On June 12, 2023, the Yosef Defendants filed a motion to dismiss the Florida Action. *Id.* The Florida court granted the motion on January 26, 2024. ECF No. 36-5 ("Florida Order") at 9.[1]

---

[1] The Florida Order is also attached to Plaintiffs' amended complaint as Exhibit A. ECF No. 32 at 33-42.

The Florida court held that the case in Florida must be dismissed for two reasons. First, it held that, under Florida law, the forum selection clause in the various partnership agreements that provide that all disputes arising from the agreements must be brought in the Tel Aviv District Court is valid, enforceable, and controlling. *Id.* at 5. (The Florida court does not appear to have addressed the effect, if any, of the forum selection clauses referring to the "District Court in Ramla," which as noted above does not exist.) Second, it held that, regardless of the enforceability or effect of the forum selection clauses in the partnership agreements, "Baltimore County, Maryland is a much better suited forum for the parties' dispute than any court in Florida." *Id.* at 6. The court specifically relied in part on a stipulation by the Yosef Defendants that they would not "contest personal jurisdiction or venue in Baltimore," and also that they would accept service of process in Maryland. *Id.* at 9. Accordingly, the Florida court accepted the Yosef Defendants' stipulation, and further ordered that the Yosef Defendants accept service of process in *either* Baltimore or Tel Aviv, so long as Plaintiffs filed new actions in either jurisdiction within 120 days of January 26, 2024. *Id.* at 9. Although the Florida court did not specify which set of parties it was permitting to elect whether to proceed in Maryland or Israel, the context makes clear that it understood its order to give Plaintiffs the choice of which forum in which to proceed. *See id.* (ordering the Yosef Defendants to "stipulate acceptance of service of process, in either forum," and explaining that its ruling meant that "Plaintiffs can reinstate their suit in either of the alternate forums without undue inconvenience or prejudice"). The Florida court did not specify whether such new case, if brought in Maryland, was to be filed in state court or federal court.

Two months before the Florida court's dismissal order, a second case had been filed in Israel—on November 27, 2023, by the Yosef Brothers and Yosef 2019 LLC, in Tel

Aviv District Court against Plaintiffs and others ("Second Israel Action"). ECF No. 43 at 13. As explained below, in July 2024, the Tel Aviv court ruled that the Second Israel Action could proceed in light of the parties' "sole jurisdiction stipulation" set forth in their partnership agreements. ECF No. 36-6 at 5. In doing so, the Tel Aviv court denied a motion by Carmeli and the other defendants (who are Plaintiffs in this case) to "suspend" that case because it was not the "appropriate forum" to hear it, holding instead that "special circumstances" had not been shown sufficient to "justify the negation of the sole jurisdiction stipulation between the parties." *Id*. The Second Israel Action remains pending and is currently in a discovery phase.

Plaintiffs filed this case on May 17, 2024, falling within the 120-day timeframe that had been ordered by the Florida court. *See* ECF No. 1. Plaintiffs amended their complaint on July 31, 2024. ECF No. 32. Plaintiffs assert claims of fraud, conspiracy, and violations of RICO §§ 1962(c)-(d) against the Yosef Defendants and the Salazar Defendants. Plaintiffs further assert claims of gross negligence and breach of fiduciary duty against only the Salazar Defendants.

The Yosef Defendants and Salazar Defendants have both filed motions to dismiss (ECF Nos. 36, 39), Plaintiffs have filed response briefs (ECF Nos. 43, 48), and Defendants have replied (ECF Nos. 54, 56). A hearing on the motions to dismiss was held on January 21, 2025.

## III.    STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a defendant asserts that, even assuming the truth of the alleged facts, the complaint fails "to state a claim upon which relief can be granted," the defendant may move to dismiss the complaint. Fed. R. Civ. P.

12(b)(6). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The pleadings must contain sufficient factual allegations to state a facially plausible claim for relief. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As noted above, when considering such a motion, the Court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King*, 825 F.3d at 212.

## IV.    DISCUSSION

The Yosef Defendants and Salazar Defendants have filed separate motions to dismiss the amended complaint. The Yosef Defendants' arguments focus on jurisdiction, seeking an order dismissing this case in favor of the Second Israel Action. The Salazar Defendants have moved to dismiss principally on failure-to-state-a-claim grounds. The two sets of arguments for dismissal will be addressed in turn.

### H. Yosef Defendants' Motion to Dismiss (ECF No. 36)

The Yosef Defendants assert several grounds for dismissal. First, they argue that this case should be decided—and dismissed—on issue preclusion grounds because the Florida court has already determined that the forum selection clause is valid, enforceable, and controlling. Second, the Yosef Defendants argue that, regardless of issue preclusion, there is a valid and binding forum selection clause applicable to the

parties in this proceeding. Third, the Yosef Defendants argue that the case should be dismissed for failure to join a necessary party under Fed. R. Civ. P. 19. Fourth, the Yosef Defendants argue that, under the doctrine of *forum non conveniens*, this case should be dismissed because the Tel Aviv District Court is in a better position to adjudicate this dispute.

For the reasons explained below, the Court disagrees with the Yosef Defendants and finds that (a) the Florida decision does not preclude this Court from assessing the forum selection clause's enforceability, and (b) the Yosef Defendants have waived the enforcement of the forum selection clause. The Court further finds that Baltimore, Maryland is a convenient forum to hear this case, and that Yosef 2019, LLC is not a necessary party to this proceeding.

### i.    Issue Preclusion

The Yosef Defendants first assert that this case should be decided on issue preclusion (*i.e.* collateral estoppel) grounds. The Yosef Defendants primarily argue that this Court does not have jurisdiction over this case because the Florida court has already held that the forum selection clause is valid, enforceable, and controlling as to the Yosef Brothers (who were not signatories to the various agreements invoked by the Amended Complaint). ECF No. 36-1 at 9-16. They argue that the Florida court's holding has issue-preclusive effect, binding this Court to a ruling that Tel Aviv, Israel is the *only* forum that could hear this or any dispute relating to the Partnership Agreements. *Id.* Plaintiffs argue, in response, that the Florida court, which expressly authorized Plaintiffs to proceed *either* in Maryland or Israel, confirms that this Court *does* have subject matter jurisdiction, or at least that the Florida's court ruling does not *preclude* this case from proceeding here. ECF No. 43 at 10-13.

The doctrine of issue preclusion (traditionally known as "collateral estoppel") "forecloses the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [collateral estoppel] is asserted had a full and fair opportunity to litigate." *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004) (quoting *Sedlack v. Braswell Servs. Grp., Inc.*, 134 F.3d 219, 224 (4th Cir. 1998) (internal quotation marks and citation omitted). When a defendant invokes the doctrine of collateral estoppel "to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant," the defendant is employing the doctrine of "defensive collateral estoppel." *Id.*

In determining the preclusive effect of a state court judgment, federal courts must, pursuant to the full faith and credit doctrine, apply the rendering state's law of collateral estoppel. *McDonald v. City of West Branch, Mich.*, 466 U.S. 284, 288 (1984); *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 373 (1996); *In re Genesys Data Technologies, Inc.*, 204 F.3d 124, 127-28 (4th Cir. 2000); *Washington v. Pellegrini*, 125 F.4th 118, 130 (4th Cir. 2025). Thus, in order to determine whether collateral estoppel principles apply to the Florida state court's ruling, the Court must examine Florida's law for the elements of collateral estoppel. *See In re Ansari*, 113 F.3d 17, 19 (4th Cir. 1997) (applying Virginia state law on the elements of collateral estoppel to determine the preclusive effect of a Virginia state court judgment).

Florida law generally requires five elements for the doctrine of collateral estoppel to apply:

> (1) the identical issue was presented in a prior proceeding; (2) the issue was a critical and necessary part of the prior determination; (3) there was a full and fair opportunity to

litigate the issue; (4) the parties to the prior action were
identical to the parties of the current proceeding; and (5) the
issue was actually litigated.

*Marquardt v. State*, 156 So.3d 464, 481 (Fla. 2015). However, some cases in Florida

drop the "critical and necessary" element, only requiring the other three elements for

the doctrine to apply. *See, e.g.*, *Dadeland Depot, Inc. v. St. Paul Fire and Marine Ins.*

*Co.*, 945 So.2d 1216, 1235 (Fla. 2006); *Dept. of Health & Rehab Servs. v. B.J.M.*, 656

So.2d 906, 910 (Fla. 1995). The parties agree that elements (3) and (5) are satisfied; if

this Court concludes that the first element has not been satisfied—*i.e.*, that the "issue"

presented here is not "identical" to that was presented in Florida—the Court need not

decide whether the "critical and necessary" element has been satisfied.

   Although Florida courts have not provided substantial guidance on the standard

for measuring the identity of the relevant issues, the Eleventh Circuit, in applying

Florida law, has held that one factor in evaluating identity is whether the second

proceeding "involve[s] application of the same rule of law as that involved in the prior

proceeding." *In re Harris*, 3 F.4th 1339, 1346 (11th Cir. 2021) (quoting *Winn-Dixie*

*Stores, Inc.*, 746 F.3d 1008, 1036 (11th Cir. 2014). In the bankruptcy context, Florida

law has provided that if there is any "reasonable doubt" as to what was actually *decided*

in the rendering court's decision, that doubt should be resolved against granting that

decision preclusive effect. *Id.* (citation omitted).

   The Yosef Defendants argue that the issue presented in the Florida Action was

whether the forum selection clause (or at least the one referring to the District Court in

Tel Aviv) is valid, enforceable, and controlling against the Yosef Brothers even though

they were not signatories to the agreements in question. ECF No. 36-1 at 12. They point

to that aspect of the Florida Order as carrying preclusive effect and contend that it

establishes that this case can only proceed in Israel. ECF No. 36-1 at 12. Plaintiffs argue

that the issue presented in the Florida Action was which of the three possible

jurisdictions—Israel, Maryland, or Florida—were appropriate forums for the dispute,

and that the Florida court held that while Florida was not an appropriate forum, *either*

Israel or Maryland were appropriate forums. ECF No. 43 at 18-19. Plaintiffs argue that if

the Florida court had understood its order as enforcing the forum selection clause as

such—*i.e.*, as ruling that the parties' disputes must proceed in Israel only—it would

neither have given Plaintiffs the option of proceeding in Maryland nor have ordered

Defendants to accept service of process in Maryland.

The Florida ruling, as both sides illustrate in their arguments, contains multiple

"holdings" that could reasonably be interpreted as the operative holding or as dicta. On

one hand, the Florida court *does* state that, applying Florida law, the forum selection

clause could be valid, enforceable, and controlling as to the Yosef Brothers. ECF No. 36-

5 at 4. On the other hand, the Florida court's opinion also concluded, after analyzing the

Yosef Brothers' alternative *forum non conveniens* argument, that *either* Maryland or

Israel would be a more appropriate forum to adjudicate this dispute, and ruled that

Plaintiffs could re-file their suit, with service of process deemed accepted by the Yosef

Defendants, in *either* Tel Aviv, Israel *or* Baltimore, Maryland so that "Plaintiffs can

reinstate their suit in either of the alternate forums without undue inconvenience or

prejudice." *Id.* at 9.

These were two alternative holdings, one based on the forum selection clauses,

the other based on *forum non conveniens*. Either would have been sufficient, standing

alone, to support the Florida court's dismissal order. The Yosef Defendants latch onto

the forum selection holding, contending it carries preclusive effect. Plaintiffs point to the

*forum non conveniens* holding, contending it shows the Florida court was *not* deciding that the case *must* proceed in Israel and instead that it could proceed in either Maryland or Israel. As the Eleventh Circuit has explained, "[i]f a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone." *In re Harris*, 3 F.4th at 1348 (citing Restatement (Second) of Judgments § 27 cmt. i (1982)); *see also Sun State Roofing Co., Inc. v. Cotton States Mut. Ins. Co.*, 400 So.2d 842, 844 (Fla. 2d Dist. Ct. App. 1981) (declining to apply collateral estoppel doctrine to a general verdict that does not specify which theory of liability a jury relied on in reaching its conclusion).

 In light of the dual nature of the Florida court's decision—and the fact that either basis for dismissal could be fairly characterized as a holding and the other dicta—as well as the Florida court's express instruction that Plaintiffs *could* elect to proceed in Maryland, the Yosef Defendants have not shown that the Florida Order establishes (as a matter of issue preclusion) that the parties' dispute must proceed in Israel. [2]

### ii. Forum Selection Clause

 Because the Florida Order does not have preclusive effect, the Court must determine whether Plaintiffs' claims are barred from proceeding in this forum by the forum selection clause in the Partnership Agreements. As noted above, that clause

---

[2] The Court also agrees with Plaintiffs that the Florida Order lacks preclusive effect for the additional reason that the parties in the Florida action are not identical to the parties in this present proceeding—as the Yosef Defendants have conceded. *See* ECF No. 43-6 at 5 (Yosef Defendants stating in a responsive pleading in the Second Israel Action that "the parties in the [Baltimore] proceedings are different from the parties in the original action in Florida.").

provides that "[u]nique and exclusive jurisdiction with respect to any matter related to this Agreement will vest exclusively in the Tel Aviv District Court, and no other court shall have jurisdiction." ECF No. 36-2 at 11.[3] The Yosef Defendants are not parties to the Partnership Agreements, but they argue they are entitled to invoke the forum selection clauses in those agreements as a basis for dismissal in this case because they are members of Yosef 2019, LLC, the entity that *is* a party to the Partnership Agreements. *See, e.g.*, ECF No. 36-1 at 11 (partnership agreement between Yosef 2019, LLC and Baltimore 1). In response, Plaintiffs argue that (1) the Yosef Brothers may not invoke the forum selection clause as they were not parties to the agreements, (2) the forum selection clause does not apply to tort claims, and (3) the forum selection clause is unenforceable because the Partnership Agreements (which contain the forum selection clauses) were entered into as a result of fraudulent inducement and are therefore voidable. ECF No. 43 at 15-18.

Ordinarily, a federal court hearing a case where federal jurisdiction is based on diversity jurisdiction applies the choice-of-law rules of the forum state (here, Maryland). *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) ("The conflict of laws rules to be applied by [a] federal court . . . must conform to those prevailing in [the]

---

[3] As also noted above, the Court recognizes that the forum selection clause in the Agreement to Invest confers exclusive jurisdiction to the "District Court in Ramla." ECF No. 36-4 at 30. Judge Amit-Anisman of the District Court in Tel Aviv-Jaffa has already made clear, in a ruling in the ongoing Second Israel Action, that "there is no such court" and this is therefore "a prohibited stipulation of the material jurisdiction." ECF No. 36-6 at 4. The Yosef Defendants do not rely on that forum selection as a basis for their motion to dismiss in this case. The sole question is whether the forum selection clause in the Partnership Agreements, referring to the Tel Aviv District Court, requires dismissal of this case.

state courts. Otherwise, the accident of diversity of citizenship would constantly disturb equal administration of justice in coordinate state and federal courts sitting side by side."). When it comes to enforcement of forum selection clauses, however, federal law applies, whether the case itself arises under state law (and is in federal court via diversity) or under federal law. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) (applying federal law to decide enforceability of forum selection clause in admiralty case); *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 518–21 (1974) (applying *Bremen* in federal securities case); *Bryant Elec. Co., Inc. v. City of Fredericksburg*, 762 F.2d 1192, 1196 (4th Cir. 1985) (holding that *Bremen* applies in diversity cases too); *see also Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 650 (4th Cir. 2010) ("[A] federal court interpreting a forum selection clause must apply federal law in doing so.").[4]

      Under federal law, a forum selection clause agreed to by parties is enforceable unless a "clear showing" has been made that such enforcement would be "unreasonable under the circumstances." *M/S Bremen*, 407 U.S. at 10. A forum selection clause may be unreasonable if:

---

[4] In some circumstances, where a contract contains a choice of law clause *and* a forum selection clause, the enforceability or interpretation of the forum selection clause must be analyzed under the chosen law. In *Albemarle*, for example, the Fourth Circuit held that English law (which was the parties' chosen law) governed whether the parties' forum-selection clause (which provided that the contract was "subject to . . . the jurisdiction of the English High Court") was permissive or mandatory. 628 F.3d at 651. Here, the Yosef Defendants do not contend that Israel law governs the enforceability or applicability of the forum selection clause in the Partnership Agreements; they only invoke U.S. federal or Maryland law. ECF No. 36-1 at 10-11 n.7. Accordingly, the Court need not decide whether, under Israeli law, the forum selection clause in the Partnership Agreements would be enforceable by the Yosef Defendants or otherwise require dismissal in this case.

> (1) [its] formation was induced by fraud or over-reaching; (2) the complaining party "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) [its] enforcement would contravene a strong public policy of the forum state.

*Albemarle Corp.*, 628 F.3d at 651 (quoting *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996); *see also Vulcan Chem. Tech., Inc. v. Barker*, 297 F.3d 332, 339 (4th Cir. 2002). "[A]bsent a showing that the chosen forum is unreasonable or was imposed by fraud or unequal bargaining power, the parties' choice should be enforced." *Vulcan Chem. Tech., Inc. v. Barker*, 297 F.3d at 339.

As an initial matter, the forum selection clause in the Partnership Agreements likely does cover the tort claims asserted by Plaintiffs. Plaintiffs assert that their fraud, conspiracy to commit fraud, and RICO claims against the Yosef Defendants fall outside the scope of the forum selection clause's language that controls for any "matter *related to* this [Partnership] Agreement." ECF No. 36-2 at 11 (emphasis added); ECF No. 43 at 17. Courts in this circuit have consistently held that similarly worded contractual forum selection clauses apply to related tort claims. *Belfiore v. Summit Federal Credit Union*, 452 F. Supp. 2d 629, 632 (D. Md. 2006) (finding a similar forum selection clause to encompass related tort claims); *In re Eternity Shipping, Ltd., Eurocarriers, S.A. for Exoneration from or Limitation of Liability*, 444 F. Supp. 2d 347, 384 (D. Md. 2006) (same); *Berry v. Soul Circus, Inc.*, 189 F. Supp. 2d 290, 294 (D. Md. 2002) (same); *Varsity Gold, Inc. v. Lunenfeld*, No. 08-cv-550-CCB, 2008 WL 5243517, at *3 (D. Md. Dec. 12, 2008).

Here, the tort claims are related to the Partnership Agreements as they implicate

whether the Yosef Defendants, through Yosef 2019, LLC, performed their obligations under the Partnership Agreements. *See Belfiore*, 452 F. Supp. 2d at 632 ("[P]leading alternate non-contractual theories is not alone enough to avoid a forum selection clause if the claims asserted arise out of the contractual relation and implicate the contract's terms."). Therefore, the forum selection clause presumptively applies to the claims asserted by Plaintiffs in the Amended Complaint.

But here, the forum selection clause in the Partnership Agreements does not require or justify dismissal, for two reasons—either of which independently would be sufficient grounds to deny the Yosef Defendants' motion.

**First**, the Yosef Defendants have *explicitly* waived their right to invoke and enforce the forum selection clauses, based on representations and stipulations they made in the Florida Action and First Israel Action. *See Bartels by and through Bartels v. Saber Healthcare Grp., LLC*, 880 F.3d 668, 678 (4th Cir. 2018) ("A party may expressly waive a contractual right, or it may waive the right impliedly, through acts or conduct that naturally lead the other party to believe that the right has been intentionally given up.") (cleaned up). The Yosef Defendants made representations in the First Israel Action that, for example, "there is no affinity with the Israeli courts and that the *plaintiffs must litigate with the defendants in their domicile – United States*." ECF No. 43-2 at 5 (emphasis added). In the Florida Action, the Yosef Defendants later conditionally stipulated that they "will not contest personal jurisdiction or venue in Baltimore," and the Florida court rejected the conditionality of that stipulation and ordered the Yosef Defendants to accept service of process if Plaintiffs file in Baltimore, Maryland. ECF No. 36-5 at 9. Accordingly, even if the forum selection clause were otherwise enforceable by the Yosef Defendants, they have waived the right to object to

litigating this dispute in Maryland.

**Second**, the Yosef Defendants have *impliedly* waived their right to invoke and enforce the forum selection clauses based on the agreed-upon language of the Partnership Agreements. (The decisions of the courts in Florida and Israel, applying Florida and Israeli law to a similar question, do not have preclusive effect on this issue for the reasons discussed above. *See supra* § IV.A.i.)[5] Although the Yosef Defendants cite cases demonstrating that forum selection clauses may be enforced against non-signatories in certain circumstances, the Yosef Defendants are asserting a more novel application of that doctrine: that the non-signatories *themselves* can enforce a forum selection clause in an agreement of which they are not a party. *See* ECF No. 36-1 at 11 ("Under both Florida law and federal law, forum selection clauses will be enforced *against* non-signatories where there is a close relationship between the signatory and the non-signatory.") (emphasis added).

While the Fourth Circuit has not addressed this very issue, other circuit courts applying federal law have consistently held that "non-parties may be bound to a forum selection clause, if the non-party is so closely related to the dispute such that it becomes foreseeable that it will be bound." *Allianz Ins. Co. of Canada v. Cho Yang Shipping Co., Ltd.*, 131 F. Supp. 2d 787, 791 (E.D.V.A. 2000) (cleaned up) (citing *Hugel v Corporation of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993) and *Manetti-Farrow, Inc. v. Gucci Am.,*

---

[5] The Court further notes that, in the Florida Action, First Israel Action, and Second Israel Action, Yosef 2019, LLC (the actual signatory to the agreements containing the forum selection clause) was a party to the proceedings when deciding the question of whether to enforce the forum selection clause. Thus, none of those cases presented the question of whether the forum selection clauses were enforceable where, as here, the only parties seeking to enforce them are third parties (*i.e.*, non-contracting parties) with respect to the Partnership Agreements.

*Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988)). Courts in this district have adopted this standard. *See, e.g., In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840 (D. Md. 2013); *Law Offices of Mark J. Muffoletto, LLC v. Am. Recovery Serv. Inc.*, No. 21-cv-116-DKC, 2021 WL 1060345 (D. Md. Mar. 19, 2021); *CMA CGM (America), LLC v. RLI Ins. Co.*, No. 12-cv-3306-AW, 2013 WL 588978 (D. Md. Feb. 13, 2013). And the Second Circuit has held, in applying this standard, that non-signatories may enforce the contractual right of a forum selection clause's venue designation against a signatory. *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 723 (2d Cir. 2013) ("We hold that a non-signatory to a contract containing a forum selection clause may enforce the forum selection clause against a signatory when the non-signatory is 'closely related' to another signatory.").

Therefore, on first glance, the Yosef Defendants would seem to satisfy the closely-related-and-foreseeable test: they were the only two members of Yosef 2019, LLC, they signed the various Partnership Agreements on behalf of Yosef 2019, LLC, and they worked directly with Plaintiffs to satisfy various contractual obligations under the Partnership Agreements such as providing deal reports and selecting houses to purchase. But even when the closely-related-and-foreseeable test has been satisfied, federal courts have declined to allow non-signatories to enforce a forum selection clause when the underlying contracts in question contain a no-third-party-beneficiaries clause. *See Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1169 (11th Cir. 2009) (applying a contractual clause which prevents non-signatories from enforcing certain provisions in the agreement as to certain non-signatory defendants).

Here, one of the Partnership Agreements, the Agreement to Invest, contains the following clause:

21.4    The Parties will take all additional necessary measures, including signing additional documents which are reasonably necessary to implement and perform this Agreement, to its spirit and its letter. Aside from the Parties to this Agreement, the fact that the Parties to this Agreement have signed it *does not establish or grant, directly or indirectly, any right or benefit whatsoever on any third party (excluding the Partnership)*, and no claim will be entertained as if the Parties have established or granted, by signing this Agreement, any such right or benefit.

ECF No. 36-4 at 31 (emphasis added). This provision precludes third parties that are not the signatories from claiming that any right has been conferred or established to them, such as the exclusivity of a forum or choice of law. Although the Agreement to Invest is one of only several in the series of Partnership Agreements, it reflects the latest of the parties' intent and understanding with respect to the parties' relationship and dealings, as well as the obligations on Yosef 2019, LLC and the Yosef Defendants (such as that they shall "be responsible for finding the properties, preparing transaction reports, planning the relevant renovations," etc.) that the Plaintiffs claim have not been satisfied. ECF No. 36-4 at 19. There is nothing in the Agreement to Invest that *contradicts* any of the terms or provisions in the prior Partnership Agreements; in fact, the Agreement to Invest seems to expand upon several terms previously agreed upon by the parties. And while the Partnership Agreements do not contain the same exact provision, they do contain a no-transfers provision that states that "[n]o Partner is entitled to sell, assign, transfer, pledge, mortgage, or perform any other action with his rights in the Partnership, unless they secured the consent of the other Partner." ECF No. 36-2 at 10.

Therefore, read as a whole, the various governing Partnership Agreements, by their very language, preclude the Yosef Defendants, third parties to the contracts, from

enforcing a right to a forum selection clause and choice of law clause that is conferred *only* to the signatory parties (i.e., Plaintiffs and Yosef 2019, LLC). The Yosef Defendants have not provided any reason why this Court should disregard the clear language precluding third parties from exercising rights conferred in the Agreements. Therefore, the forum selection clause, while valid and enforceable, is not controlling as to the Yosef Defendants.

As noted above, there is another basis that Plaintiffs invoke as a reason not to enforce the forum selection clauses, at least at the pleadings stage: Plaintiffs' contention that Defendants fraudulently induced Plaintiffs to enter into the partnership agreements that contain the forum selection clauses. Indeed, under federal law, a forum selection clause that was "induced by fraud or over-reaching" is unenforceable. *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996) (summarizing the definition set out in *M/S Bremen v. Zapata Off-Shore Co*., 407 U.S. 1 (1972)). Under Maryland law, the standard is the same. *See, e.g*., *Gilman v. Wheat, First Sec., Inc*., 345 Md. 361, 378 (1997) (holding that a forum selection clause "induced by fraud or overreaching" is "unreasonable" and thus unenforceable, adopting the standard set forth in the Restatement (Second) of Conflict of Laws § 80 (1971)). Here, Plaintiffs have alleged, for example, that the Yosef Defendants made numerous misrepresentations in order to "induce plaintiffs and their investors to partner with [the Yosefs]." Am. Compl ¶ 23; *see also, e.g*., *id*. ¶ 28 ("[T]he Yosef Brothers successfully induced plaintiffs to enter into sham 'partnership' agreements with the Yosef Brothers knowing that the information supplied by the Yosef Brothers and relied upon by the plaintiffs was false and was known by the Yosef Brothers to be false."); *id*. ¶ 77 ("In the course of their scheme, defendants diverted to their own benefit in excess of $2.4 million to which they had no

right and in which they had no valid interest and did so without disclosing those distributions to plaintiffs. . . . Defendants did so after having induced plaintiffs to invest over $2.6 million, distributing only $285,229 of that investment back to plaintiffs before cutting off all distributions and taking the rest of the money for their own benefit without any authority or permission."). The Yosef Defendants do not contend that those allegations are not pled with particularity. But the Court need not decide whether those allegations suffice to render the forum selection clause to have been "induced by fraud" and thus unenforceable, because the Yosef Defendants are not entitled to rely on the clause in any event, for the other reasons explained above.

For these reasons, the forum selection clause is unenforceable as to the Yosef Defendants, and accordingly this case may proceed here.

### iii. Joinder

Plaintiffs have not asserted any claims against Yosef 2019, LLC in this proceeding. The Yosef Defendants contend this requires dismissal of the Amended Complaint under Federal Rule of Civil Procedure 19. ECF No. 36-1 at 16-20.

Under Rule 19(a), a party is a "required party" and "must be joined as a party" if:

> (A)    in that person's absence, the court cannot accord complete relief among existing parties; or
> (B)    that party claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i)    as a practical matter impair or impede the person's ability to protect the interest; or
> > (ii)    leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). If a person or entity is a "required party" under Rule 19(a)(1), the

court may order that the person or entity be made a party. Fed. R. Civ. P. 19(a)(2).

But joinder may not be feasible if a person or entity is not subject to service of process, or if joinder would destroy jurisdiction. *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir. 1999). If joinder is not feasible, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). Whether the infeasibility of joining a "required" party justifies dismissal turns on an analysis of the following factors:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*Id.*[6]

Where, as here, a defendant has moved to dismiss for "failure to join a party under Rule 19," Fed. R. Civ. P. 12(b)(7), a court "must accept all factual allegations in the complaint as true and draw inferences in favor of the non-moving party." 5C Charles A. Wright & Arthur R. Miller, Federal Practice & Procedures § 1359 (3d ed. 2024); *Am Gen.*

---

[6] Earlier versions of Rule 19(a) referred to "necessary" parties, and Rule 19(b) to "indispensable" parties. "[T]he necessary-party label has been eliminated to emphasize that the real purpose of this rule is to bring before the court all persons whose joinder would be desirable for a just adjudication of the action; the term 'indispensable' was used in Rule 19(b) only in a conclusory sense, and it was completely eliminated in 2007 amendments, when the federal rules were restyled." § 1604 *Persons to be Joined if Feasible—In General*, 7 Fed. Prac. & Proc. Civ. § 1604 (3d ed.).

*Life & Accidental Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005). "Courts are loath to dismiss cases based on nonjoinder of a party, so dismissal will be ordered only when the resulting defect cannot be remedied and prejudice or inefficiency will certainly result." *Owens-Illinois, Inc.*, 186 F.3d at 441.

The Yosef Defendants argue that "[p]laintiffs cannot hold the Yosefs personally liable for the actions of Yosef 2019, LLC without piercing the corporate veil or otherwise obtain complete recovery without the party to the underlying agreements" and that therefore Yosef 2019, LLC is a required party to this action. ECF No. 36-1 at 16. Plaintiffs respond that the Court can accord complete relief with Yosef 2019, LLC being present because at most that entity and the Yosef Brothers might be jointly and severally liable; that Plaintiffs are trying to hold the Yosef Defendants liable for their own actions, not the actions of the LLC; and that in any event the entity is defunct. ECF No. 43 at 25-28.

This Court agrees with Plaintiffs that Yosef 2019, LLC is not a "required" party. This Court can award complete relief without Yosef 2019, LLC present in this litigation because, as Plaintiffs correctly point out, complete relief "refers to *relief as between the persons already parties*, not as between a party and the absent person whose joinder is sought." *Risett v. Mayor & City Council of Baltimore*, No. 13-cv-1860-GLR, 2013 WL 5276553, at *3 (D. Md. Sept. 18, 2023) (holding that third party was not a required party for RICO and other claims). Indeed, the Yosef Defendants are free to assert third-party claims for indemnification or otherwise (if any exist), or argue that they are not personally liable for Plaintiffs' claims on the merits. Although the Yosef Defendants rely on *Gunvor SA v. Kayablian*, 948 F.3d 214, 221 (4th Cir. 2020), the plaintiffs in that case were seeking damages from "alter ego" defendants based on an entity's failure to perform under the contracts at dispute. 948 F.3d 214, 221 (4th Cir. 2020). Here,

Plaintiffs are making statutory and tort claims against the Yosef Defendants acting in their capacity as individuals in these various business arrangements, rather than the actions taken by Yosef 2019, LLC. While the Plaintiffs use "veil-piercing" phrases throughout the Amended Complaint, such as "the Yosef Brothers dominated and controlled Yosef 2019 LLC," Am. Compl. ¶ 8, and "the Yosef Brothers were the alter ego of Yosef 2019 LLC," *id.*, Plaintiffs' actual claims target the conduct of the Yosef Defendants *in conjunction with* Yosef 2019, LLC.

The Court therefore concludes that Yosef 2019, LLC is not a required party under Fed. R. Civ. P. 19(a) and need not analyze whether this case should be dismissed under Fed. R. Civ. P. 19(b).

### iv.    Forum Non Conveniens

While the Yosef Defendants do not squarely invoke *forum non conveniens* for dismissal, they do note that "as a matter of convenience, judicial economy, and frankly, common sense, the Tel Aviv District Court is in a better position to adjudicate this dispute regarding partnership agreements written in Hebrew and admittedly governed by Israeli law." ECF No. 36-1 at 2. The Court is similarly unpersuaded by this argument for the reasons already mentioned before and expanded here.

Federal law governs this question of *forum non conveniens*. *American Dredging Co. v. Miller*, 510 U.S. 443 (1994). In deciding whether an alternative forum is more appropriate for a dispute, this Court must consider whether such forum is "1) available; 2) adequate; and 3) more convenient in light of the public and private interests involved." *Jiali Tang v. Synutra Intern., Inc.*, 656 F.3d 242, 248 (4th Cir. 2011) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)). In weighing the public and private interests involved, the Court must consider, as to the private factors:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action, and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Piper Aircraft Co.*, 454 U.S. at 242 n.6 (citation omitted).

As to the public factors, the Court must consider:

> the administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home, the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action, the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law, and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Id.* (cleaned up).

The private factors weigh heavily in favor of keeping the case in Maryland. Indeed, this is established by the Yosef Defendants' own representations and contentions, made in the prior Florida action and the various Israel actions:

- "[The Yosef Defendants] are U.S. residents who reside at Baltimore for many years, live and work in the U.S." ECF No. 43-2 (petition filed by Yosefs in Israel) at 3.

- "All facts unequivocally make it clear that there is no affinity with the Israeli courts and that the plaintiffs must litigate with the defendants in their domicile – United States. After all, in recent years the defendants have had no relation to Israel, the set of facts relevant to the claim was conducted entirely in the U.S., the entire real estate is in the U.S., as well as the signing of the partnership agreement. Conducting the proceedings

in Israel will be cumbersome and inefficient and will constitute misuse of legal proceedings, since the [Yosef Defendants] have been joined to the statement of claim even though they are not parties of the partnership agreement." *Id.* at 5.

- "The private interests in issue favor a forum in Baltimore, Maryland because there is adequate access to evidence and to witnesses in Baltimore concerning the 18 properties in Baltimore that the Plaintiffs identify in their Amended Complaint and in their [Second Amended Complaint] as being at the heart of the instant controversy. The public interest further favors Baltimore as the proper forum because courts should encourage the trial of controversies in the localities where they arise." ECF No. 43-5 at 3.

The Court agrees that Baltimore, Maryland is where the dispute arose, where the relevant properties and witnesses are located, and the bulk (perhaps all) of other relevant evidence would be located. The Yosef Defendants have failed to satisfy their burden of showing that Israel is the most appropriate forum.

*        *        *

For the reasons stated above, the Yosef Defendants' motion to dismiss (ECF No. 36) is DENIED as to all counts.[7]

## I.  The Salazar Defendants' Motion to Dismiss (ECF No. 39)

As explained above, according to the Amended Complaint, Defendant Salazar, and his law firm Salazar Law, represented the Joint Asset LLCs as counsel, and also

---

[7] In reaching this decision, the Court need not and does not decide the additional argument raised by Plaintiffs that the Yosef Defendants' arguments are barred by judicial estoppel.

served as title and escrow agent for the transactions at issue. Plaintiffs name the Salazar Defendants in all of their causes of action: counts 1-5 (the fraud counts against all defendants), counts 6-10 (the conspiracy counts against all defendants), and counts 11-12 (the RICO counts against all defendants), and also counts 13 and 14 against the Salazar Defendants only (for gross negligence and breach of fiduciary duty, respectively).

The Salazar Defendants argue that Plaintiffs lack standing to bring their claims against the Salazar Defendants because Plaintiffs "have sued in their individual capacity for alleged injuries derived entirely from the injuries the Joint Asset LLCs allegedly sustained." ECF No. 39-1 at 4. Plaintiffs respond that they do have standing because they were misled and induced to advance funds on false pretenses by the Salazar Defendants. ECF No. 48 at 28. The Salazar Defendants further argue that, even if Plaintiffs have standing, Plaintiffs have failed to state claims as to any of the counts asserted, and also that the complaint constitutes improper "group pleading" because of the ways the complaint conflates the Yosef Defendants and the Salazar Defendants. For the reasons explained below, the Court agrees that Plaintiffs have failed to state any claims against the Salazar Defendants for which relief can be granted, and accordingly will be dismissing the claims against them on that basis; the Court need not and does not reach the issues of standing and group pleading.

The Court first explains why Plaintiffs have not alleged facts establishing that the Salazar Defendants owed Plaintiffs fiduciary duties, or a duty of care giving rise to a cognizable negligence claim. The absence of such duties largely explains why Plaintiffs also have not alleged facts sufficient to state a claim for fraudulent concealment; no other duty arises giving rise to a cognizable fraudulent concealment claim either.

Finally, the Court will explain why the complaint also does not state claims under RICO.

### i.    Counts 13 (gross negligence) and 14 (breach of fiduciary duty)

In Count 13, Plaintiffs have sued the Salazar Defendants for gross negligence, and in count 14 for breach of fiduciary duty. In both counts, Plaintiffs contend that the Salazar Defendants owed Plaintiffs a duty of care (count 13) and fiduciary duties (count 14) because (1) the Salazar Defendants were "counsel to the Joint Asset LLCs" and Plaintiffs were members of those entities, and (2) the Salazar Defendants served as "title agent" with respect to certain transactions. Am. Compl. ¶¶ 155, 162.[8] Under neither theory of duty does the complaint state facts that would establish a duty of care giving rise to a cognizable negligence (or gross negligence) claim, or facts that would establish a fiduciary duty giving rise to a cognizable breach-of-fiduciary-duty claim.

Under Maryland law, gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another—something more than simple negligence, and likely more akin to reckless conduct." *Nero v. Mosby*, 890 F.3d 106, 127-28 (4th Cir. 2018) (applying Maryland law) (cleaned up). "Because there can be no negligence where there is no duty that is due, an analysis as to negligence usually begins with the question of whether a legally cognizable duty exists." *Kennedy Krieger Inst., Inc. v. Partlow*, 460 Md. 607, 633 (2018) (cleaned up). Such a duty is "an obligation, to which the law will give recognition and effect, to

---

[8] With respect to the gross negligence claim specifically, Plaintiffs also contend that a duty of care arose under Md. R. Att'y § 19-408(b)(2)'s requirement that an attorney safeguard escrow funds that are the subject of a dispute, and under Maryland Real Property § 10-802 by failing to enter into a written agreement with respect to the trust money held for the disputed transactions. Am. Compl. ¶¶ 155-157. Those additional duty theories specific to count 13 are discussed below.

conform to a particular standard of conduct toward another." *Doe v. Pharmacia & Upjohn Co.*, 388 Md. 407, 415 (2005). The "classic factors" that courts use "to decide questions of duty under the common law" are:

> the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered the injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost[,] and prevalence of insurance for the risk involved.

*Kiriakos v. Phillips*, 448 Md. 440, 486 (2016).

And "[w]here the failure to exercise due care creates a risk of economic loss only, courts have generally required an intimate nexus between the parties as a condition to the imposition of tort liability." *Jacques v. First Nat. Bank of Maryland*, 307 Md. 527, 534 (1986). "This intimate nexus is satisfied by contractual privity or its equivalent." *Id.* at 534-35. *Compare, e.g.*, *Iglesias v. Pentagon Title and Escrow, LLC*, 206 Md. App. 624, 653-55, 669-64 (2012) (holding that neither bank nor title company owed a duty of care to third-party victim of identity theft), *with 100 Inv. Ltd. P'ship v. Columbia Town Center Title Co.*, 430 Md. 197, 223-25 (2013) (holding that title company owed partnership a duty of care when conducting a title search, because "contractual privity [was] easily established," and the title companies "knew that the Partnership would rely on the title commitment" in "making business decisions").

As for fiduciary duties, as clarified in the recent Supreme Court of Maryland case *Plank v. Cherneski*, Maryland law "recognizes an independent cause of action for breach of fiduciary duty." 469 Md. 548, 559 (2020). "To establish a breach of fiduciary duty, a

plaintiff must demonstrate: (1) the existence of a fiduciary relationship; (2) breach of the duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary." *Id.* Such duties can arise in the context of LLCs, at least so long as the LLC's operating agreement does not disclaim or waive such duties. *Id.* at 572 ("[M]anaging members of an LLC owe common law fiduciary duties to the LLC and to the other members based on principles of agency."); *see also id.* at 573 (holding that provisions in LLC operating agreements can "alter existing duties or create other duties that would otherwise not exist").

A "fiduciary relationship" giving rise to fiduciary duties "can be created by common law, by statute, or by contract, and can have different characteristics." *Id.* at 598. "[T]here is no 'one-size fits all' breach of fiduciary tort that encompasses all types of relationships." *Id.* "Well-known examples of habitual or categorical fiduciary relationships include those between trustees and beneficiaries, agents and principals, directors and corporations, lawyers and clients, and guardians and wards, as well as the relationship among partners." *Id.* (quoting Deborah A. DeMott, *Relationships of Trust and Confidence in the Workplace*, 100 Cornell L. Rev. 1255, 1261 (2015)).

Here, as noted above, Plaintiffs first invoke the Salazar Defendants' role as attorneys to the Joint Asset LLCs as a basis to contend that, although Plaintiffs were not the Salazar Defendants' *clients*, the Salazar Defendants should nonetheless be deemed to have owed duties of care and fiduciary duties to Plaintiffs. Maryland law precludes such a leap in the context of the relationship alleged here. "Maryland, as a general rule, adheres to the strict privity rule in attorney malpractice cases." *Flaherty v. Weinberg*, 303 Md. 116, 130 (1985); *see also Goerlich v. Courtney Indus., Inc.*, 84 Md. App. 660, 663 (1990) ("As a general rule, an attorney owes a duty of diligence and care only to his direct client/employer."). The same general rule requiring privity applies in breach-of-

fiduciary-duty claims asserted against attorneys. *Ferguson v. Cramer*, 349 Md. 760, 772-73 (1998). "The sole exception" is where a "nonclient" "allege[s] and prove[s] that the intent of the client to benefit the nonclient was a direct purpose of the transaction or relationship." *Flaherty*, 303 Md. at 130-31. This "third-party beneficiary exception has a rather narrow scope." *Id.* at 131. "[T]he test for third party recovery is whether the intent to benefit actually existed, not whether there could have been an intent to benefit the third party." *Id.* For example, "Maryland courts have been reluctant to find the existence of a duty running from one party's attorney to the other party in real estate transactions." *Tchorzewski v. Musick*, Case No. 21-cv-1243-CCB, 2022 WL 2135376, at *2 (D. Md. June 13, 2022) (citing *Clagett v. Dacy*, 47 Md. App. 23, 30 (1980)).

Insofar as counts 13 and 14 are premised on duties arising from the Salazar Defendants' role as attorneys, Plaintiffs' allegations do not satisfy these strict limitations on third-party attorney fiduciary duties. Plaintiffs were counterparties in arms-length business negotiations with the Yosef Defendants. *See, e.g.*, Am. Compl. ¶¶ 20-32. As Plaintiffs concede, the Salazar Defendants did not represent Plaintiffs as counsel, but rather represented the Joint Asset LLCs. That means that, insofar as Plaintiffs contend the Salazars owed them fiduciary duties (or a duty of care that would give rise to a negligence or gross negligence claim) *as attorneys*, Plaintiffs are required to plead that the "direct purpose" of the transactions as to which the Salazar Defendants represented the Joint Asset LLCs was "to benefit the nonclient," *i.e.*, to benefit Plaintiffs. *Flaherty*, 303 Md. at 130-31. None of Plaintiffs allegations, even construed in their favor, establish such a "direct purpose." Plaintiffs attempt to distinguish *Flaherty* and its progeny by contending that, unlike in *Flaherty*, here Plaintiffs "entrusted funds to the attorney" and the Salazar Defendants "also assume[d] the role of title/escrow agent." ECF No. 48 at 44

36

n.2. Those allegations may be relevant to whether the Salazar Defendants' alleged role as "title agent" gave rise to fiduciary duties, discussed below. But they do not bring the relationship between the Salazar Defendants and Plaintiffs within the narrow third-party-beneficiary exception to Maryland's default rule that only clients—*i.e.*, individuals or entities with direct attorney-client relationships with an attorney—may assert a negligence or fiduciary duty claim against such attorney.

Plaintiffs next contend that the use of the Salazar Defendants' escrow account to facilitate the transactions at issue gave rise to fiduciary duties or other (non-fiduciary) duty of care *to Plaintiffs*. Some cases suggest that such an arrangement does not give rise to fiduciary duties. *See Lathan v. Sternberg*, No. 0988 Sept. term 2014, 2015 WL 6125427, at *7 (Md. Ct. Spec. App. Sept. 30, 2015) (holding that attorney did not owe non-client fiduciary duties, despite attorney being alleged to have served as escrow agent on behalf of his client). But the Supreme Court of Maryland has explained, albeit arguably in dicta, that "a lawyer who serves as an escrow agent is governed by the applicable law relating to fiduciaries even though the lawyer does not render legal services in the transaction." *Advance Fin. Co. v. Trustees of Clients' Sec. Tr. Fund of Bar of Maryland*, 337 Md. 195, 206 (1995). Accordingly, the Court will assume without deciding that the Salazar Defendants' alleged role as escrow agent gave rise to fiduciary duties they owed to Plaintiffs.

But even if Plaintiffs' allegations are sufficient to establish that the Salazar Defendants, in their capacity as escrow agent, owed fiduciary duties or a tort duty of care to Plaintiffs, the amended complaint does not state claims on which relief can be granted, because Plaintiffs have not alleged facts sufficient to satisfy the breach element of either their gross negligence or breach-of-fiduciary-duty claim. An escrow agent's

duties are defined by an escrow agreement: "[E]scrow agents owe their depositors a fiduciary duty to disburse the deposits according to the terms of the escrow agreement." *Roman v. Sage Title Grp., LLC*, 229 Md. App. 601, 613 (2016); *see also Tchorzewski*, 2022 WL 2135376, at *3 (discussing standard). Here, Plaintiffs do not contend there was any standalone escrow agreement that governed what the Salazar Defendants were required to do (or not do) with funds that the Salazar Defendants deposited in the Salazar trust account. The Yosef Defendants were the managers of the Joint Asset LLCs, Am. Compl. ¶ 74, which as noted above were the Salazar Defendants' clients. And the Joint Asset LLCs were created pursuant to the "partnership" agreements, which served as the operating agreements for the Joint Asset LLCs. *Id.* ¶ 29-30. Accordingly, the Salazar Defendants were entitled to—and arguably required to—follow the directions given by their clients, the Joint Asset LLCs. Because the Joint Asset LLCs were managed by the Yosef Defendants, that meant the Salazar Defendants were entitled to take direction from the Yosef Defendants, as their clients' managers.

Plaintiffs do not allege any breach of those duties. Plaintiffs do not allege, for example, that the Salazar Defendants directed any funds to parties other than the sellers of the properties that were being purchased. Plaintiffs do allege, for example, that they did not know that one or more of those sellers were the Yosefs themselves (*see* Am. Compl. ¶ 53), or individuals affiliated with the Yosefs (*see id.*). Plaintiffs also suggest that the Salazar Defendants should not have followed the Yosef Defendants' direction if the Yosef Defendants did not co-invest in percentages consistent with the Partnership Agreements. *See id.* ¶ 30, 56, 62. But nowhere do Plaintiffs contend that the Salazar Defendants directed funds to entities other than as consistent with the requirements of the operating agreements and the direction of the Joint Asset LLCs' managers. In other

38

words, Plaintiffs do not allege any breach by the Salazars of the escrow-related duties imposed by the pertinent agreements.

For these reasons, count 14 does not state a claim for breach of fiduciary duty. These same reasons largely explain why count 13 does not state a claim for gross negligence. But Plaintiffs also seek to salvage count 13, the gross negligence count, by invoking Maryland Attorneys' Rule of Professional Conduct 19-408(b)(2)'s requirement that an attorney safeguard escrow funds that are the subject of a dispute, and Maryland Real Property § 10-802's requirement that agreements with respect to the trust money be in writing. Am. Compl. ¶¶ 155-157. As for Rule 19-408(b)(2), that theory of liability fails not only for the reasons discussed above—that the Salazar Defendants did not owe a duty of care to Plaintiffs—but also because "[v]iolation of a Rule [of Professional Conduct] does not itself give rise to a cause of action against an attorney nor does it create any presumption that a legal duty has been breached." Md. R. Prof'l Conduct 19-301.1(20).

Finally, as for Maryland Real Property § 10-802, this is what Plaintiffs allege in their amended complaint:

> [The Salazar Defendants] failed to adhere to Maryland Real Property Article, Section 10-802, by failing to enter into a written agreement with respect to the trust money held for the transactions at issue containing the protective provisions set forth in the statute, or in the alternative, entered into such an agreement without notice to plaintiffs and then breached its terms. In either event, that statutory violation constituted negligence *per se*.

Am. Compl. ¶ 157. That statute requires written agreements "with the purchaser and seller of the residential real estate." Md. Code Ann., Real Prop. § 10-802(c). Plaintiffs do not allege they were either the purchaser or seller of real estate. Rather, they were

investors in entities that purchased and/or sold properties. The Salazar Defendants

point this out in their motion to dismiss. ECF No. 39-1 at 26. Plaintiffs offer no

response, or otherwise cite authority for the proposition that investors like Plaintiffs

were entitled as a matter of law to be parties to written escrow agreements with the

Salazar Defendants.

For these reasons, Counts 13 and 14 do not state claims on which relief can be

granted, and will be dismissed.

### ii.    Counts 1–5: Fraud Claims

Plaintiffs assert five counts of common-law fraud, Am. Compl. ¶¶ 83-107, and five

counts of civil conspiracy to commit fraud against the Salazar Defendants, Am. Compl.

¶¶ 108-123. "In Maryland, it has long been clear that fraud may consist in the

suppression of the truth as well as in the assertion of a falsehood." *Stanley v. Central

Garden & Pet Corp.*, 891 F. Supp. 2d 757, 765 (D. Md. 2012). Here, Plaintiffs contend

they have asserted fraud claims (and conspiracy-to-commit-fraud claims) on both

affirmative misrepresentation and concealment theories.

A fraud claim based on affirmative misrepresentations requires the following

elements:

> (1) the defendant made a false representation to the plaintiff,
> (2) the falsity of the representation was either known to the
> defendant or the representation was made with reckless
> indifference to its truth, (3) the misrepresentation was made
> for the purpose of defrauding the plaintiff, (4) the plaintiff
> relied on the misrepresentation and had the right to rely on it,
> and (5) the plaintiff suffered compensable injury as a result of
> the misrepresentation.

*Hoffman v. Stamper*, 385 Md. 1, 28 (2005). A fraudulent *concealment* claim requires

these elements:

> (1) the defendant owed a duty to the plaintiff to disclose a
> material fact or that the defendant concealed a material fact
> for the purpose of defrauding the plaintiff, (2) the defendant
> failed to disclose that fact, (3) the defendant intended to
> defraud or deceive the plaintiff, (4) the plaintiff took action in
> justifiable reliance on the concealment, and (5) the plaintiff
> suffered damages as a result of the defendant's concealment.

*Green v. H&R Block*, 355 Md. 488, 525 (1999).

Parties alleging fraud "must state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). For allegations of fraud by affirmative misstatement, "this requires alleging the who, what, when, where, and how of an alleged fraud." *Singh v. Lenovo (United States) Inc.*, 410 F. Supp. 3d 310, 326 (D. Md. 2021). "The Fourth Circuit has cautioned, however, that a court should hesitate to dismiss complaints under Rule 9(b) if it is satisfied '(1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that [the] plaintiff has substantial prediscovery evidence of those facts.'" *Id.* (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). "And though the Fourth Circuit has not explicitly adopted any relaxed pleading requirements for fraud by omission claims, district courts in this circuit have done so." *Id.* (citing cases). "A relaxed pleading requirement accommodates the difficulties associated with pleading omissions as opposed to affirmative statements, given that omissions cannot be described in terms of the time, place, and contents of a misrepresentation or the identity of the person making the misrepresentation." *Id.* "What is required to plead fraud by omission is 'a baseline level of particularity' that rises above 'conclusory allegations of fraud.'" *Id.* (quoting *Anne Arundel Cty. v. Xerox State & Local Solutions*, No. 16-cv-563-JFM, 2016 WL 5720705, at *9 (D. Md. Sept. 30, 2016)).

To the extent Plaintiffs' fraud claims are premised on affirmative misrepresentation theories, the amended complaint fails to state claim against the Salazar Defendants because Plaintiffs have failed to allege any such *misrepresentations* made by those defendants. In their brief in opposition to the motion to dismiss, Plaintiffs contend that the Salazar Defendants "engaged in direct misrepresentations." ECF No. 48 at 29. They contend the Salazar Defendants "prepared deeds that were false, with knowledge of their falsity." *Id.* (citing Am. Compl. ¶¶ 63, 66, 69). But that allegation does not appear in any of those paragraphs, or elsewhere in the amended complaint for that matter, and a plaintiff may not amend a complaint through a brief in opposition to a motion to dismiss. *McDonald v. LG Electronics USA, Inc.*, 219 F. Supp. 3d 533, 541 (D. Md. 2016); *Whiting-Turner Contracting Co. v. Liberty Mut. Ins. Co.*, 912 F. Supp. 2d 321, 334 (D. Md. 2012), *aff'd,* 2 F.3d 56 (4th Cir. 1993); *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 (D. Md. 1997), *aff'd,* 141 F.3d 1162 (4th Cir. 1998). In paragraph 66, Plaintiffs do allege that the Salazar Defendants "prepared deeds" for specified properties. But none of those paragraphs allege that the deeds contained false information. Plaintiffs also contend the Salazar Defendants "prepared other documents . . . knowing they were false" including "sham agreements and sham entities." ECF No. 48 at 29 (citing Am. Compl. ¶¶ 61, 67-71). But none of those paragraphs contain any such allegations either. In short, the amended complaint does not allege that the Salazar Defendants made any affirmative misrepresentations, let alone with particularity as required by Federal Rule 9(b).

That leaves Plaintiffs' fraudulent *concealment* theory against the Salazar Defendants. Unlike as to the affirmative misrepresentation claim, the amended complaint does allege (with particularity, as that term is understood in the context of a

fraudulent concealment claim) that the Salazar Defendants concealed certain documents from Plaintiffs, such as "HUD-1 forms, deeds and related documents from the underlying transactions," Am. Compl. ¶ 71, and concealed other information from Plaintiffs as well, in particular the fact that certain properties being purchased through the investments at issued were owned by (and thus being sold by) the Yosef Defendants' entity, Yosef 2019, LLC. *Id.* ¶ 69.[9]

But that does not necessarily establish a claim for fraudulent concealment, because Plaintiffs must also allege facts establishing that the Salazar Defendants had a *duty* to disclose such documents and information to Plaintiffs. The Restatement encapsulates this requirement:

> A failure to disclose material information may result in liability *if the actor has a duty to speak*. Such a duty exists when:
>
> (a) the actor has made a prior statement and knows that it will likely mislead another if not amended, even if it was not misleading when made;
>
> (b) the actor is in a fiduciary or confidential relationship with another that obliges the actor to make disclosures; or
>
> (c) the actor knows that the other party to a transaction is mistaken about a basic assumption behind it, and that the other party, because of the relationship between them, the customs of the trade, or other circumstances, would reasonably expect disclosure of what the actor knows.

Restatement (Third) of Torts: Liab. for Econ. Harm § 13 (2020) (emphasis added); *see*

---

[9] Plaintiffs also allege that the Salazar Defendants concealed "the identity of the purchaser" of certain properties. Am. Compl. ¶ 67. In context, that appears to refer to the same information alleged in paragraph 69 to have been concealed, namely that the Yosef Defendants were the direct or indirect owners of one or more of the properties that were the subject of the investments at issue.

*also, e.g.*, *Morris v. Osmose Wood Preserving*, 340 Md. 519, 547 n.12 (1995) ("Non-disclosure . . . has never been sufficient to establish fraud, in any context, absent some duty to disclose").

With respect to whether the Salazar Defendants owed Plaintiffs a duty to disclose the information that Plaintiffs contend they concealed, Plaintiffs appear to primarily rely on the contention that a fiduciary duty existed between the Salazar Defendants and Plaintiffs. And if a fiduciary duty existed, that may well have given rise to such a duty. *See Herring v. Offutt*, 266 Md. 593, 597 (1972) (recognizing duty of fiduciary "to make full disclosure of all known information that is significant and material to the affairs" of the fiduciary relationship). But as discussed above, Plaintiffs have not alleged facts establishing a fiduciary relationship. They also have not identified any alternative basis for a duty to disclose that information. For example, although a duty to disclose can arise where a defendant "suppresses or conceals facts which materially qualify representations made to another," *Finch*, 57 Md. App. at 239—*i.e.*, where a defendant had made "only a partial or fragmentary statement of fact, which misleads the plaintiff to its injury," *Singh*, 510 F. Supp. 3d at 310 (citation omitted)—Plaintiffs have not alleged such facts either, let alone sufficient to satisfy Rule 9(b). *See Luminace Solar Maryland, LLC v. Tigo Enery, Inc.*, Case No. 23-cv-1606-GLR, 2024 WL 1283329, at *5 ("To the extent that Plaintiffs rely on misleading fragmentary statements of fact allegedly made by Tigo to establish a duty to disclose, Rule 9(b)'s heighted pleading standard for claims of fraud applies.") (citing *Hill v. Brush Engineered Materials, Inc*., 383 F. Supp. 2d 814, 822-23 (D. Md. 2005)).

As noted above, the Salazar Defendants did not represent Plaintiffs. Plaintiffs were third parties to the attorney-client relationship. Regardless of whether the Salazar

Defendants owed a duty to disclose *to their clients* the allegedly concealed information, Plaintiffs have not alleged facts that would establish that that duty to disclose extended to them too.

Because Plaintiffs have failed to allege a duty owed by the Salazar Defendants to Plaintiffs directly to disclose to Plaintiffs the information that Plaintiffs contend the Salazar Defendants fraudulently "concealed" from them, the amended complaint does not state a fraud-by-omission claim on which relief can be granted either.

### iii.    Counts 6–10: Civil Conspiracy Claims

As for a claim alleging civil conspiracy to commit fraud, under Maryland law, a plaintiff pleading a claim for conspiracy must allege:

> (1) a confederation of two or more persons by agreement or understanding; (2) some unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal; and (3) actual legal damages resulting to the plaintiff.

*Lloyd v. General Motors Corp.*, 397 Md. 108, 154 (2007). "Independent acts of two wrongdoers do not make a conspiracy." *Murdaugh Volkswagen, Inc. v. First Nat. Bank of South Carolina*, 639 F.2d 1073, 1076 (4th Cir. 1981). And Plaintiffs are permitted "to recover against any one or more of the conspirators without naming them all as defendants." *Alexander & Alexander, Inc. v. B. Dixon Evander & Associates, Inc.*, 88 Md. App. 672, 696 (1991); *Kimball v. Harman*, 34 Md. 401, 409-10 (1871).

Because Plaintiffs' civil conspiracy claim here is premised on allegations of fraud, Plaintiffs are required to plead their conspiracy counts with the same heightened standard under Fed. R. Civ. P. 9(b) as the fraud claims. *Adobe Sys. Inc. v. Gardiner*, 300 F. Supp. 3d 718, 731 (D. Md. 2018) ("Similar to claims for fraud, conspiracy to commit fraud must abide by Rule 9(b)'s particularity requirement.").

As the Court has explained above, Plaintiffs have failed to plead counts 1 through 5 of fraud against the Salazar Defendants. *See supra* IV.B.ii. And, as the Salazar Defendants correctly point out, in the absence of cognizable claims of fraud, conspiracy is not a separate tort "in the absence of other tortious injury to the plaintiff." *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, 189 (1995) (quoting *Alexander v. Evander*, 336 Md. 635, 645 n.8 (1994)). Because the amended complaint

46

does not state cognizable fraud claims against the Salazar Defendants, Plaintiffs' civil conspiracy claims as against the Salazar Defendants will be dismissed as well.

### iv.    Counts 11–12: RICO §§ 1962(c)-(d)

Plaintiffs assert two counts of RICO violations under 18 U.S.C. §§ 1962(c)-(d) against the Salazar Defendants. Am. Compl. ¶¶ 124-152. The Salazar Defendants have moved to dismiss these counts for failure to state a claim.

To plead a RICO claim, Plaintiffs must allege "(1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering." *Chambers v. King Buick GMC*, 43 F. Supp. 3d 575, 588 (D. Md. 2014). Plaintiffs must also plead that Defendants' conduct was the proximate cause of their alleged injuries. *Id.* An enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). A RICO enterprise is one that has "continuity, unity, shared purpose and identifiable structure." *Chambers*, 43 F. Supp. 3d at 588-89. The elements of an "enterprise" are that: (1) it is an "ongoing organization," (2) with "associates functioning as a continuing unit," and (3) it is an entity "separate and apart from the pattern of activity in which it engages." *Mitchell Tracy v. First. Am. Title Ins. Co.*, 935 F. Supp. 2d 826, 842 (D. Md. 2013).

To show a "pattern of racketeering activity," a plaintiff must "adequately plead at least two predicate acts of racketeering activity." *American Chiropractic Assoc., Inc. v. Trigon Healthcare*, 367 F.3d 212, 233 (4th Cir. 2004). "Racketeering activity" is defined as "any act which is indictable" under certain specified criminal provisions, including mail fraud or wire fraud. 18 U.S.C. § 1961(1). "When mail and wire fraud are asserted as the predicate acts in a civil RICO claim, each must be pled with particularity, pursuant to Rule 9(b)." *Proctor v. Metropolitan Money Store Corp.*, 645 F. Supp. 2d 464, 473 (D.

Md. 2009). "Both mail and wire fraud have similar core elements that must be proven: (1) defendant's knowing participation in a scheme to defraud; and (2) the mails or interstate wire facilities were used in the furtherance of the scheme, but they need not be an essential element of the scheme." *Id.*

*Proctor* is instructive here. There, plaintiffs pled "a grand mortgage foreclosure rescue scam that involved the sale and leaseback of Plaintiffs' properties from which [the Defendants] among others would siphon off and transfer the equity illegally." *Id.* The complaint in *Proctor* details "the issuance of false and deceptive HUD-1 settlement statements and other loan documents and instruments, fraudulent and false correspondence, and bank wired monies." *Id.*; *see also Williams v. Equity Holding Corp.*, 498 F. Supp. 2d 831, 842 (E.D. Va. 2007) (holding that 9(b) was satisfied from a factually analogous set of allegations).

Plaintiffs have failed to plead the RICO claims with particularity. Plaintiffs have not specified the "time, place, or content" of the mail or wire fraud committed *by the Salazar Defendants*. *See* Am. Compl. ¶ 136 ("Thus, for example, the transfers of funds by the Salazar Defendants addressed above were advanced through wire transactions and facilitated by wire and mail communications."). Plaintiffs also fail to plead, as was done in *Proctor*, the amount of money wire transferred by the Salazar Defendants, when these wire transfers were made, and the same can apply to the mail fraud claims. The Court further notes that, ordinarily, commercial fraud does not give rise to federal RICO claims, and Plaintiffs have not identified any reason why this Court should view this commercial fraud case as falling outside that limitation. *See Menasco, Inc. v. Wasserman*, 886 F.2d 681, 685 (4th Cir. 1989).

### v.     Plaintiffs will be permitted to file a motion for leave to amend

At the motions hearing, counsel for Plaintiffs requested that, if their claims against any Defendants are dismissed, that Plaintiffs be granted leave to file an amended complaint. The Court does not decide that issue at this time. If Plaintiffs wish to file an amended complaint as to the Salazar Defendants, they shall file a motion for leave to amend, along with a proposed amended complaint, and explain why they believe that the amendment will not be futile—i.e., that the proposed amended complaint will satisfy the requirements of the federal rules. *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008).

## CONCLUSION

For the foregoing reasons, the Yosef Defendants' motion to dismiss, ECF No. 36, will be denied, and the Salazar Defendants' motion to dismiss, ECF No. 39, will be granted. A separate order follows.

Date:     February 26, 2025     _____
Adam B. Abelson
United States District Judge